## Leister, Appellant, *v.* Miller.

Argued January 5, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Carolus A. Wade,* with him *Raymond B. Reid* and *William E. Parke,* for appellants.

*Robert S. Gawthrop, Jr.,* with him *Gawthrop & Gawthrop* and *William C. Schwebel,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, March 22, 1954:

Plaintiffs appeal from a decree in equity denying their prayers for relief.

On March 29, 1950, plaintiffs recovered two judgments in trespass actions against Bertha Miller, the first of which was begun on April 7, 1948, and the second some months thereafter.

On April 13, 1948, approximately one week after the commencement of one of the trespass actions, the defendant, Miller, conveyed to the defendant, Herwegh, her son, a property the record title to which had been in her since 1942.

Approximately a month after plaintiffs recovered their judgments they filed a bill in equity alleging that no cash was paid to Bertha Miller by her son for the conveyance, and that it was made to prevent the application of the premises to the payment of her debts. The bill prayed that the deed might be declared fraudulent, and that the premises be reconveyed to her.

At the trial plaintiffs' only testimony was that of the defendants who were called as on cross-examination. They testified that Bertha Miller's mother died in 1920, leaving a will which provided, inter alia: "I . . . leave to each of my gransons . . . $5000 cash . . . I entrust her, [defendant, Miller] . . . to give the $5000 cash to each . . . when they are 21 . . . 'Not to be put in bank or banks' "; that she paid the mother of each of two other grandsons when they became 21; that she retained her son's money although he became 21 in 1939; that in 1940 she invested part of it in a property which she sold a short time later; that the instant premises were purchased at her son's direction, but that she took title in her name because Herwegh was having marital difficulties; that the cash paid for the property came from the legacy; that Herwegh lived in the premises, repaired them, etc. until he was sent to prison in September, 1943; that the conveyance to Herwegh was made when he thought his wife's decree in divorce was final; and that the ownership was never intended to be in the defendant, Miller. None of this testimony was denied, contradicted or impeached.

The chancellor's findings of fact were that the cash paid for the premises was part of the son's legacy; that the conveyance to the son was because he wanted the premises "back in his name"; that there was "no evidence . . . upon which a finding of fraud in said conveyance could be predicated." The chancellor specifically stated that the findings were "established by credible testimony"; and that defendants' testimony "is believed."

Appellants contend that "the testimony of the Defendants [called as on cross-examination] must be evaluated and sifted and only that part of their testimony found to be creditable remains to become part of the Plaintiffs' case." They then point to some alleged

contradictory portions of the testimony to support their contention that the defendants should not be believed in toto.

The argument of the appellants is one that should be directed only to the chancellor: *Fishel v. McDonald,* 376 Pa. 281, 101 A. 2d 674. Actually the contention is that this Court should substitute its findings for the findings of the court below, which, of course, cannot be done. The chancellor believed the defendants and found that no fraud had been committed. His findings were supported by the evidence, and, when affirmed by the court en banc, have the effect of a jury's verdict, binding on us: *Fishel v. McDonald,* supra.

Plaintiffs further contend that the conveyance can be sustained only on the theory of a resulting trust, and since it was not made within five years after the trust accrued, the same could not be enforced (Act of 1856, P. L. 532, 12 PS §83). The Act provides: "No . . . action [shall] be maintained . . . to *enforce,* any implied or resulting trust as to realty, but within five years after such . . . trust accrued . . ." (Italics supplied). There are three answers to this contention: First, as stated in *Faunce v. McCorkle,* 321 Pa. 116, 119, 183 A. 926: "The statute protects the holder of the legal title but he may waive its provisions. 'The Statute of Frauds does not prevent a trustee from honestly carrying out his parol agreements, it merely avoids the trust at his option' . . . 'Where an oral trust of an interest in land is created inter vivos, the trustee can properly perform the trust if he has not transferred the interest, although he cannot be compelled to do so': Restatement, section 43, page 134." The only purpose of the Act is "to protect the holder of the title" and he may waive the benefit of the statute: *Williams v. Moodhard,* 341 Pa. 273, 280, 19 A. 2d 101. Second, the Act provides only that "no . . . *action*" may be

456

brought "to enforce" the trust; but no action was brought by Herwegh for such purpose. Third, defendant-son was in possession until the fall of 1943 and the conveyance was made before the passing of five years from that time. This prevented the limitation from running against him and also refutes the charge of laches: *Wosches v. Kraning*, 353 Pa. 481, 485, 46 A. 2d 220.

Decree affirmed at the cost of the plaintiffs.