421 A.2d 471

Richard O. THOMPSON, Administrator of the Estate of Cecil Thompson, a/k/a Cecil Armstrong Thompson, Deceased, and Richard O. Thompson, Administrator d. b. n. of the Estate of Emily Thompson, a/k/a Lillian E. Thompson, a/k/a Lillian C. Thompson, a/k/a Lillian C. Thompson, Deceased,

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.

Richard O. THOMPSON, Administrator d. b. n. of the Estate of Emily Thompson, a/k/a Lillian E. Thompson, a/k/a Lillian C. Thompson, a/k/a Lillian C. Thompson, Deceased,

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 14, 1978.

Decided Aug. 1, 1980.

194

J. Shane Creamer, Philadelphia, for appellant.

Ronald Ziegler, Philadelphia, for appellee.

Before VAN der VOORT, WATKINS, and MONTGOMERY, JJ.

VAN der VOORT, Judge:

On December 12, 1968, Mrs. Emily Thompson suffered injuries when she slipped on a piece of paper or trash and fell while descending the stairwell of a subway station owned and maintained by Southeastern Pennsylvania Transportation Authority, appellant. She died on May 3, 1970, but the testimony was conflicting as to whether her death resulted from the accident.

At the time of the accident, the police took Mrs. Thompson to a hospital where she was treated for an abrasion of the right knee and a laceration of the left shin. She made several subsequent outpatient visits to the hospital until January 15, 1969 when it was noted in her hospital record that the wounds on her legs were "almost all healed". However, she continued to visit the hospital for some time at approximately monthly intervals. On February 5, 1969, the examining doctor observed tender scabs on both legs. On March 14, 1969, there was an unhealed two–inch uninfected laceration on the shin and moderate swelling of the right knee. On June 10, 1969, she had three ulcerated sores on the right leg which were diagnosed as a traumatic infected ulcer. She returned to the hospital for treatment in August 1969. In January, 1970, while in the hospital, she bumped her left leg on a wheel chair and developed an ulcerated sore. The hospital death certificate gave the immediate cause of death as pneumonia due to infected ulcers on the left leg with sepsis due to hypertensive arteriosclerosis. A later death certificate issued by the medical examiner's office listed the cause of death as cardiac arrest due to myocardial infarction.

The litigation which grew out of the accident was tried on a two–count Complaint seeking both a wrongful death and a survivor's recovery.

In answer to certain special Interrogatories, the jury determined the appellant was liable in damages for the injuries caused by its negligent maintenance of its property but that the accident had not been the cause of Mrs. Thompson's death. It awarded damages of $34,223.85. Following

a hearing on post–trial motions for a judgment N.O.V. or a new trial, the trial court sustained the verdict on the condition that the appellee file a remittitur in the sum of $13,000. This was done and judgment entered for the resulting $21,223.85.

The verdict was well supported by evidence and the appellant raises no issue as to the amount of the judgment. However, appellant contends that the judgment should be vacated on the ground that the appellee was not a viable party plaintiff. This issue involved an examination of the course of pleading in this case. It is not a recommended case–book study in how it should be done.

It is to be recalled that the accident occurred on December 12, 1968 and that Emily Thompson died on May 3, 1970. A Complaint was filed on August 5, 1970 in the name of Emily Thompson and her husband, Cecil Thompson, and docketed by the trial court in its August Term, 1970 at No. 610 (hereinafter No. 610). The affidavit to the Complaint purported to bear the signature of Emily Thompson notarized on August 3, 1970. It was claimed, but not established by evidence, that Emily Thompson had signed the affidavit before her death on May 3. Her husband and co–plaintiff, Cecil Thompson, was living when the Complaint was filed. Appellant entered a general appearance and filed an Answer.

On April 5, 1971, letters of administration on Emily Thompson's estate were issued to her husband, Cecil, and on April 22 of that year, the caption of the Complaint at No. 610 was amended by stipulation to read: CECIL THOMP-SON, individually and as Administrator of the Estate of Lillian E. Thompson, a/k/a *Emily Thompson v. Southeastern Pennsylvania Transportation Authority.* Appellant consent-ed by stipulation to the amendment of the caption and raised no issue about the earlier irregularity of filing suit in Emily Thompson's name after her death. Appellant con-tends that appellee's counsel failed to advise it of the date of Emily's death, but there is no evidence that inquiry was ever made. In any event, the application for the letters of

administration on Emily's estate which were the basis of the stipulated substitution would have revealed the date of death had it been examined.

On April 20, 1971, Cecil Thompson, acting as administrator of his wife's estate, initiated a second action against appellant by a Summons in Trespass. He died on January 25, 1972. For some unexplained reason, the sheriff did not effect service on the appellant until April 24, 1972, but appellant entered a general appearance on May 15, 1972. This second action was filed in the trial court at its April Term, 1971, at No. 4759 (hereinafter No. 4759).

On June 5, 1972, the appellant served Interrogatories on the appellee in No. 4759. On July 3, 1972, it obtained a Rule that the appellee file a Complaint in that action within twenty (20) days or suffer a judgment non pros. A Complaint was not filed within twenty (20) days and no judgment of non pros was entered.

Letters of administration on the estate of Cecil Thompson were issued to his brother, Richard O. Thompson, on September 20, 1972 and to the same Richard O. Thompson as successor administrator of the estate of Emily Thompson on August 6, 1974.

On July 9, 1974, appellee obtained an order from the trial court, (1) consolidating the actions at Nos. 610 and 4759, (2) approving the Complaint at No. 610 as an appropriate Complaint for the consolidated actions and (3) authorizing an amendment to the Complaint to include a wrongful death claim as well as the survivor's action. This order was entered upon petition of the appellee, and the petition and order were neither answered nor contested by the appellant.

On December 3, 1974, Richard O. Thompson was substituted in the consolidated action as administrator of the estates of both Cecil and Emily Thompson, again without objection by the appellant.

On these facts, appellant argues that there is no proper party plaintiff before the court because Emily Thompson was dead when the action at No. 610 was filed and Cecil

Thompson was dead when service of summons was completed by the sheriff in No. 4759. Appellant concludes that the consolidation of the two actions and the substitution of a second administrator as plaintiff in December 1974 were a nullity because the statute of limitations had run at No. 610 as a survival action and at No. 4759 as a wrongful death action at the time the consolidation and substitution were effected. It cites *Thompson v. Peck*, 320 Pa. 27, 181 A. 597, (1934); *Gilbert v. Thompson*, 7 D.&C. 2d 593 (1956); and *Casner v. Fisher*, 22 Pa. D.&C. 2d 1 (1960) in support of this position.

In *Thompson*, an action for personal injuries was brought against one H. A. Peck after he had died. After the applicable one–year statute of limitations had run, plaintiff petitioned to amend its Complaint by substituting the executor of the Peck estate. This was opposed and the court denied the petition stating that (320 Pa. 27, 30) "an amendment, the effect of which is to bring in new parties after the running of the statute of limitations, will not be permitted". *Gilbert* arose on a similar set of facts and the substitution of an administrator was successfully opposed for the same reason. In *Casner*, the original Complaint was filed against an estate rather than an executor or administrator, and when an effort was made after the one–year statute of limitations to substitute an administratrix, it was successfully opposed.

The record is quite different in the case before us. Appellant consented to the substitution of Cecil Thompson as adminstrator of the Estate of Emily Thompson in No. 610 on April 22, 1971. It did not contest the order of July 9, 1974, consolidating the actions at No. 610 and 4759 and authorizing an amendment of the Complaint.

At no time, were either No. 610 or No. 4759 without a viable party plaintiff. Cecil Thompson, as the husband of Emily Thompson, was an original co–plaintiff in the action at No. 610 and he also initiated the action at No. 4759. Although he died before service of process upon the appellant was completed in the second action, this did not make

the action a nullity because service was later completed and appellant entered a general appearance within a few days thereafter. While it is true that Emily Thompson had no initial standing in the action at No. 610 in view of the fact that she was not living when it was started, the action nevertheless survived on the basis of the standing of her husband as a co–plaintiff.

Hence, it can not be said that there was no pleading to amend when Cecil Thompson was substituted on April 22, 1971 at No. 610 as administrator of his wife's estate. Likewise, the court orders of July 9 and December 3, 1974, consolidating the actions, amending the Complaint and substituting Richard O. Thompson as administrator of the estates of both Emily Thompson and Cecil Thompson amends two causes of action which were properly before the court at the time of amendment. Consequently, the argument that these cases lacked a viable plaintiff at the time of amendment is without factual foundation.

█ What is really at issue in the attack upon the validity of the original actions is a belated attempt to invoke the statute of limitations. While it is true that the amendments to the pleadings in this case were made after the statute of limitations had run, that issue had been waived by the appellant. Appellant's repeated acquiescence in the substitution of parties plaintiff, the amendment of the Complaint and the consolidation of the actions amounted to an affirmative waiver of the statute; otherwise these rulings of the court were nullities. A waiver was plainly implied. *Smith, Administrator v. Pennsylvania Railroad*, 304 Pa. 294, 297, 156 A. 89 (1931).

█ The statute of limitations does not divest the court of jurisdiction over either the cause of action or the parties, but is merely a procedural bar to recovery which may be waived by consent or conduct implying consent. *Bellotti v. Spaeder*, 433 Pa. 219, 249 A.2d 343 (1969).

█ Rule 1030 of the Pennsylvania Rules of Civil Procedure requires that the statute of limitations "shall" be

pleaded as an affirmative defense under New Matter; otherwise, the defense is waived. *Royal Oil & Gas Corporation v. Tunnelton Mining Company*, 444 Pa. 105, 282 A.2d 384 (1971). It has long been our rule that unless the statute is pleaded as a defense, it is waived. *Heath v. Page*, 48 Pa. 130, 142 (1864).

Judgment affirmed.