480 A.2d 1178

**Joseph BARTANUS, Sr., Appellant,**

v.

**Bernard V. LIS and Bertha Lis, his wife and Sandra Lis Marshall.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1983.

Filed July 27, 1984.

Wieand, J., concurred and filed opinion.

50

52

Edward Morascyzk, Washington, and B. Vandenburg Hall, Fairfax, Va., for appellant.

Roger J. Ecker, Washington, for appellees.

Before ROWLEY, WIEAND and HESTER, JJ.

ROWLEY, Judge:

This is a direct appeal from an order sustaining appellees' preliminary objections to appellant's complaint in trespass and entering judgment in favor of appellees. Appellant's complaint alleged that appellees, his sister and brother-in-law and their daughter, enticed and persuaded appellant's son to stay away from his father and that, as a result, appellant suffered severe emotional stress and physical disorders for which he is entitled to recover damages. Appellees filed preliminary objections to the complaint in the nature of a demurrer and also raising the bar of the two year statute of limitations. The trial court sustained the preliminary objections and entered judgment in favor of appellees, stating that the "definitive nature" of the objections precluded further pleading. This appeal followed.

Appellant contends that the facts averred in his complaint support causes of action for (1) alienation of his son's affections, (2) harboring, and (3) the intentional infliction of emotional distress. We affirm the trial court's order insofar as it sustained the demurrer to the purported causes of action for alienation of affections and harboring. However, we find that the complaint alleges sufficient facts to sustain a potential cause of action for the intentional infliction of emotional distress and, thus, insofar as the trial court's order entered judgment against appellant regarding that claim for relief, we reverse.

In considering preliminary objections in the nature of a demurrer, the question presented is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 503–504, 267 A.2d 867, 868 (1970). A

demurrer admits every well-pleaded material fact set forth in the complaint, as well as all inferences reasonably deducible therefrom, but not conclusions of law. *Sinn v. Burd,* 486 Pa. 146, 149–150, 404 A.2d 672, 673–674 (1979); *Gekas v. Shapp,* 469 Pa. 1, 5, 364 A.2d 691, 693 (1976); *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 500, 450 A.2d 36, 37 (1982). The law does not provide a "magic formula" to determine the sufficiency of a plaintiff's complaint, however, the law *is* clear that a demurrer can only be sustained in a case free from doubt. *Hoffman v. Misercordia Hospital of Philadelphia, supra; Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. at 500, 450 A.2d at 38; *Pike County Hotels Corp. v. Kiefer,* 262 Pa.Super. 126, 135, 396 A.2d 677, 681 (1978).

In the instant case, the trial judge sustained appellees' demurrer to the complaint upon his determination that, in Pennsylvania, a parent has no cause of action against a third party for the alienation of the affections of a minor child. We agree.

The question whether a parent may recover from a third party for the alienation of the affections of his or her child appears to be a matter of first impression in our Commonwealth. At one time, Pennsylvania recognized a common-law cause of action for alienation of the affections of a husband or wife, *see Keath v. Shiffer,* 37 Pa.Super. 573 (1908). However, all such causes of action were abolished by statute in 1935. 48 Pa.C.S.A. § 170; *see Antonelli v. Xenakis,* 363 Pa. 375, 69 A.2d 102 (1949). In general no cause of action for the alienation of the affections of a child was recognized at common law. *See Miles v. Cuthbert,* 122 N.Y.S. 703 (1909); *Pyle v. Waechter,* 202 Iowa 695, 210 N.W. 926 (1926); *Schuppin v. Unification Church,* 435 F.Supp. 603, 608 (D. Vermont) *aff'd* 573 F.2d 1295 (2 Cir. 1977). The RESTATEMENT (SECOND) OF TORTS § 699 (1977) provides:

> One who, without more, alienates from its parents the affections of a child, whether a minor or of full age, is not liable to the child's parents.

In accordance with the position expressed in the Restatement, the majority of jurisdictions that have considered this question have refused to recognize a cause of action by a parent for alienation of a child's affections. *See Hyman v. Moldovan,* 166 Ga.App. 891, 305 S.E.2d 648 (1983); *Scholz v. Scholz,* 177 N.J.Super. 647, 427 A.2d 619 (1980); *Edwards v. Edwards,* 43 N.C.App. 296, 259 S.E.2d 11 (1979); *Bock v. Lindquist,* 278 N.W.2d 326 (Minn.1979); *McGrady v. Rosenbaum,* 62 Misc.2d 182, 308 N.Y.S.2d 181 (1970), *aff'd* 37 A.D.2d 917, 324 N.Y.S.2d 876 (1971); *Ronan v. Briggs,* 351 Mass. 700, 220 N.E.2d 909 (1966); *Pyle v. Waechter,* 202 Iowa 695, 210 N.W. 926 (1926); *see also, Orlando v. Alamo,* 646 F.2d 1288 (8th Cir.1981) (applying Arkansas law); *Schuppin v. Unification Church, supra.* Most courts have refrained from embracing an action for alienation of a child's affections, "in the absence of either seduction or removal from home." Prosser, THE LAW OF TORTS, § 124 at 883 (4th ed. 1971); The RESTATEMENT (SECOND) OF TORTS § 699, comment a (1977). Our research has disclosed only one modern case wherein a state court has recognized such a cause of action. *See Strode v. Gleason,* 9 Wash.App. 13, 510 P.2d 250 (1973) (intermediate appeals court held that a parent has a cause of action for compensatory damages against a third party who maliciously alienates the affections of a minor child, however, action was barred by statute of limitations).

Indeed, sound policy reasons militate against judicially creating a cause of action for the alienation of a child's affections. We find the Minnesota Supreme Court's reasoning in *Bock v. Lindquist,* 278 N.W.2d 326 (Minn.1979) (en banc) persuasive. In that case, the court articulated the following reasons in support of its refusal to sanction this cause of action:

> The circumstances under which the right has been asserted demonstrate the potential for grave abuses, in which a child becomes the object of intra-family controversy, and, indeed, a pawn in disputes over monetary matters. In the more usual case of marriage dissolution resulting in

deteriorated relationships, a cause of action by one parent against another for alienation of a child's affections would exacerbate the unhappy relationships and become a strategic tool for advantageous use of one family member over another.

*Id.* at 327–328.

Accordingly, we hold that a cause of action by a parent for the alienation of a child's affections is not cognizable in Pennsylvania.[1]

Appellant also argues that his complaint avers facts sufficient to set forth a cause of action for "harboring" a minor child. We are aware of no case in Pennsylvania that deals specifically with an action for harboring. Other jurisdictions, however, have recognized a cause of action for enticing or inducing a child to remain away from home. *See e.g. Hinton v. Hinton,* 436 F.2d 211 (D.C.Cir.1970) *aff'd* 492 F.2d 669 (D.C.Cir.1974); RESTATEMENT (SECOND) OF TORTS § 700 (1977). According to the Restatement, § 700, in order to establish that a third party has "harbored" a child, the facts must show an interference with the interests of the child's parents or other lawful custodian. Furthermore, the facts must demonstrate that the actor induced or enticed the child to remain away from home with knowledge that the parent or other lawful custodian did not consent.

■■■ Even if Pennsylvania were to recognize a cause of action under Restatement, § 700 for haboring a child, the facts averred in the instant complaint would be insufficient to satisfy the elements of such an action. The complaint herein does not aver that appellant had lawful custody of his son at the time of appellees' allegedly tortious acts. Indeed, the record discloses that appellant's son has lived

1. Appellees argue that appellant's son was not a minor when suit was instituted, since he was 20 years of age at that time. Accordingly, they contend that even if a cause of action for alienation of a minor's affections was cognizable in Pennsylvania, it would be inapplicable in the case at bar. Because we have determined that there is no cause of action for alienation of the affections of a child, whether a minor or of full age, we need not address this issue.

with appellees in Avella, Pennsylvania since 1963, when he was less than two years of age. A dispute over legal custody did arise in 1978. However, the dispute was resolved by a stipulation dated April 17, 1978, wherein the parties agreed that the child would remain in appellees' custody. Therefore, appellees did not interfere with appellant's custody rights without his consent by continuing to provide a home for his son.[2]

Appellant further maintains that his complaint avers facts sufficient to make out a claim against appellees for the intentional infliction of emotional distress. From the record in this case, it is unclear whether this issue was raised in the trial court. Nor can we determine whether the trial court considered the claim when it sustained appellees' preliminary objections and entered judgment in their favor. We note that appellant's complaint is not properly divided into separate counts for the causes of action now asserted. Pa.R.C.P. 1020(a). Rather, the complaint sets forth one count for alienation of affections and a second count for punitive damages which incorporates the allegations in the first count. The procedural error, however, is not one which necessarily forecloses the substantive rights of the parties. Pa.R.C.P. 126 ("[t]he court at every stage of any ... action ... may disregard any error or defect of procedure which does not affect the substantial rights of the parties"). See General Mills, Inc. v. Snavely, 203 Pa.Super. 162, 167, 199 A.2d 540, 543 (1964); Louis v. Clark, 227 Pa.Super. 547, 550–555, 323 A.2d 298, 299–300 (1974); Philadelphia v. Konopacki, D & C 3d 535, 538 (1975). Moreover, the appellees did not challenge the form of the complaint in their preliminary objections, and they have not raised this issue on appeal. Thus, this claim of error has been waived. Pa.R.C.P. 1032; Goodrich AmRam 2d

2. The cases cited by appellant in support of his claim are not controlling here, since they deal mainly with situations wherein a third party abducted a minor child or interfered with lawful custody under no color of right. See e.g. Pickle v. Page, 252 N.Y. 474, 169 N.E. 650 (1930).

§ 1032:2 (1976); *Hohlstein v. Hohlstein*, 223 Pa.Super. 348, 296 A.2d 886 (1972).

Even though appellant did not separate his factual allegations into separate counts specifying the legal theories underlying the complaint, the trial court was obligated to consider what causes of action were supported by the facts alleged. Under Pennsylvania's fact pleading system, the complainant need only state the material facts upon which a cause of action is based. Pa.R.C.P. 1019(a). The duty to discover the cause or causes of action rests with the trial court. *Delconte v. Stefonick*, 268 Pa.Super. 572, 408 A.2d 1151 (1979); *Philadelphia v. Konopacki*, 2 D & C 3d at 538–540. It appears that the trial court herein concluded that appellant's complaint only sought to raise a cause of action for alienation of his son's affections. We find, however, that accepting as true all well-pleaded factual allegations in the complaint, it is sufficient to sustain an action for the intentional infliction of emotional distress.

The relevant facts set forth in appellant's complaint are as follows. Joseph Bartanus, Sr., is the father of Joseph Jack Bartanus, Jr. (Joseph Jr.), who was born on May 31, 1961. Joseph Jr.'s mother is Anne Hamprecht Bartanus, appellant's former wife, who now lives in Germany. Appellant and Joseph's mother were divorced in 1963. In May of 1963, appellant asked Bertha B. Lis, his sister, and Bernard V. Lis, her husband, appellees in this action, to raise his son while he was on assignment for the United States Government in places outside the United States. While appellees cared for his son, appellant initially sent $50.00 monthly payments to appellees' home in Avella, Pennsylvania, and provided clothing and medical expenses for his son. Appellant also set up a trust fund and purchased insurance for his son's benefit.

From 1964 through 1972, appellant was assigned to various posts. When he was allowed thirty days leave every two years, he travelled to Pennsylvania to visit his son. The monthly support check that he sent to appellees gradually increased to $180.00 per month. Appellant also sent

clothes and recreational items to his son during this time. In 1972, appellant retired and moved to Avella, Pennsylvania. From 1972 through 1977, appellant spent a great deal of time with Joseph Jr. and they developed a good relationship. However, Joseph Jr. continued to reside with appellees.

In 1977, appellant proposed that his son live with him in Florida while he completed his senior year in high school. Appellant made this suggestion to his sister while she was a passenger in his car. At that time she flew into a rage, calling appellant names, using abusive language, and threatening him with bodily harm, in the presence of his son. When the suggestion was made to Bernard Lis, he too said foul things about appellant and threatened him with bodily harm. Appellant was afraid of his brother-in-law because he knew him to be of a violent nature.

Appellant's sister often represented that Joseph Jr. was her son and he was listed in school with the last name of "Lis". Appellees attempted to adopt Joseph Jr. and officially change his name without notifying appellant: they told Jr. that appellant did not love him; they prevented Jr. from visiting his relatives; and, they told him that his father's house had rats and was dirty and that he could get poisoned from being there.

Nevertheless, when Joseph Jr. was seventeen, he accompanied his father to Munich, Germany, to live with him for one year. Joseph Jr. wrote to appellees and explained that it was his own decision to live with his father. Appellees' letters to Joseph Jr. continually disparaged appellant, describing him as a whoremaster, liar, and con artist who really did not love his son. Appellees repeatedly telephoned Joseph Jr. while he was in Germany with his father and threatened to commit suicide unless he returned to Pennsylvania. They urged him to write to his congressman and tell him that he had been kidnapped by his father. At the behest of appellees, Joseph Jr. wrote a note to his father that he did not have long to live and that God would punish him.

When Joseph Jr. became moody and unhappy, appellant sent him back to Pennsylvania. Since 1977, appellant has seen his son six times because appellees have persuaded Joseph Jr. to stay away from his father. Paragraphs 54 and 55 of the complaint specifically state:

54. That the plaintiff/father has, as a result of being deprived of seeing his son and as a result of the defendant's *maliciously and viciously* destroying his good relationship with his son, the plaintiff has suffered *severe emotional distress,* a great loss of sleep, he passes blood, perspires a great deal while trying to sleep, mental pain, anguish, nervousness and high blood pressure.

55. That co-defendants have by their *intentional, reckless* and *wanton* acts, caused plaintiff *severe emotional distress;* that the conduct of co-defendants was *outrageous* and intolerable and *offends against the generally accepted standards of decency and morality;* that because of this plaintiff has experienced and continues to experience severe *emotional distress* in that he has lost the love and affection of his only child, the normal prop of old age; he is lonely and nervous and has trouble sleeping; that he faces a lonely and bleak old age. (emphasis added.)

▉ An action for the intentional infliction of mental or emotional distress has been recognized in Pennsylvania. *See, Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970); *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1981); *Beasley v. Freedman,* 256 Pa.Super. 208, 389 A.2d 1087 (1978); *Jones v. Nissenbaum, Rudolph, and Seidner,* 244 Pa.Super. 377, 368 A.2d 770 (1976); *see also Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3rd Cir.1979) and *Beidler v. W.R. Grace,* 461 F.Supp. 1013 (E.D.Pa.1978) *aff'd* 609 F.2d 500 (3 Cir.1979) (applying Pennsylvania law). Section 46 of the RESTATEMENT (SECOND) OF TORTS (1965) sets forth the basic elements of this action:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to

another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

In *Papieves v. Lawrence, supra,* our Supreme Court, relying in part on Section 46 of RESTATEMENT (SECOND) OF TORTS, determined that an individual is entitled to protection from mental distress directly caused by wanton and outrageous conduct. 437 Pa. at 378, 263 A.2d at 121. In describing what constitutes "outrageous" conduct, Comment d to Section 46 of the RESTATEMENT explains:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

We note that the Pennsylvania decisions sanctioning actions for the intentional infliction of emotional distress involve situations different than the one in the instant case. For example, in *Banyas v. Lower Bucks County Hospital, supra,* the court found that the hospital and treating physicians could be held liable for intentional or reckless infliction of emotional distress if the doctors at the hospital had, in fact, falsely prepared hospital records attributing a patient's death solely to injuries inflicted by plaintiff. 293 Pa.Super. at 127, 437 A.2d at 1239. Similarly, in *Chuy v. Philadelphia Eagles Football Club, supra,* the court found that the evidence supported a claim for intentional infliction of emotional distress where a newspaper article reported a physician's false statement that a professional athlete suffered from a fatal disease. 595 F.2d at 1273–1276. Although the facts are different, the basis claim alleged in the case at bar is the same—that is—that appellee's outrageous conduct has caused appellant to suffer severe emotional or mental distress for which he is entitled to recover damages.

Other jurisdictions have upheld this cause of action in situations involving a parent's relationship with his or her child. In *Sheltra v. Smith*, 136 Vt. 472, 392 A.2d 431 (1978), the plaintiff alleged that the defendant had intentionally, maliciously, and outrageously prevented any personal contact or other communication between the plaintiff and her daughter, thereby causing the plaintiff to suffer extreme mental distress. The trial court dismissed the complaint for failure to state a cause of action. The Vermont Supreme Court reversed, holding that the facts averred were adequate to sustain a cause of action for the newly recognized tort of intentional infliction of emotional distress. *See also, Kajtazi v. Kajtazi*, 488 F.Supp. 15, 20–21 (E.D.N.Y.1978) (court upheld cause of action for the intentional infliction of emotional distress *inter alia* where the father abducted child from the legal custody of his wife).

█ As recognized by our Supreme Court in *Papieves v. Lawrence, supra,* the intentional infliction of emotional distress is an evolving tort and its scope has not yet been clearly defined. 437 Pa. at 378, 263 A.2d at 121. However, under the principles set forth in those authorities upholding it, we believe that if appellees did engage in the conduct described in the complaint in this case, they could be held liable for emotional and mental distress suffered by appellant. The complaint alleges intentional misrepresentations made to an adolescent by his aunt and uncle concerning the morals and behavior of his father. The actions outlined in the complaint may be of the extreme and outrageous nature contemplated by Comment d to RESTATEMENT § 46. Accepting appellant's version of the facts as true, as we must at this time, it appears that appellees intentionally manipulated appellant's son in a manner "peculiarly calculated" to cause appellant serious mental or emotional distress. *Id.* If appellees did act intentionally, there need not be a showing that they were aware of the natural and probable consequences of their actions. Rather, it is enough that appellant was substantially certain to suffer severe mental or emotional distress as a result of their alleged tortious

conduct. *See, Banyas v. Lower Bucks County Hospital,* 293 Pa.Super. at 127, 437 A.2d at 12, *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d at 1275; RESTATEMENT (SECOND) OF TORTS § 46, comment i (1965).

■ The application of this tort to circumstances involving intra-family disputes may result in some difficulties. However, this case does not involve a dispute between the natural parents. We do not perceive, therefore, that an action for intentional infliction of emotional distress in *this* situation is subject to the same potential abuses attendant to an action for the alienation of a child's affections. *Contra, McGrady v. Rosenbaum,* 62 Misc.2d 182, 189, 190, 308 N.Y.S.2d 181, 189–190 (1970) *aff'd* 37 A.D.2d 917, 324 N.Y. S.2d 876 (1971). In an action for the intentional infliction of emotional distress, the central inquiry is whether there was intentional, outrageous conduct and whether the plaintiff suffered severe distress as a result of that conduct. The focus, then, is on the effect the conduct has on the plaintiff. Whether the conduct actually alienated the child may be irrelevant. Conversely, in an action for alienation of the affections of a child, it is not necessary that the conduct involved be outrageous and, more importantly, the focus is on the effect the prohibited conduct has on the child. Thus, it is imperative to determine whether the child was, in fact, alienated from his parent or parents.

Furthermore, there are built in limitations in the application of the newly recognized tort of intentional infliction of emotional distress. In holding that a plaintiff could recover for serious mental or emotional distress caused by the intentional act of mishandling the body of a deceased relative, our Supreme Court observed:

We recognize that any extension of legal liability to acts which cause emotional distress is not without its problems. We also recognize that the law cannot serve to guarantee all men's peace of mind; as the late Judge MAGRUDER remarked, "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain

toughening of the mental hide is a better protection than the law could ever be." [Magruder, "Mental and Emotional Disturbance in the Law of Torts", 49 Harv.L.R. 1033 (1936)]

But this case is not in that category. There can be little doubt that mental or emotional disorders brought on by conduct such as that set forth in the complaint at bar may be every bit as real, every bit as debilitating as ailments which have more obviously physical causes. For this reason, the obvious and inherent difficulties of the proof, or disproof, of emotional distress and the measurement of damages for such injury are not adequate cause, standing alone, to deny recovery ...

It goes without saying that in order to recover, a plaintiff asserting such a cause of action must be able to prove all the elements of his case by proper evidentiary standards.

*Papieves v. Lawrence,* 437 Pa. 373, 378–379, 263 A.2d 118, 121 (1970).

Therefore, we conclude that appellant herein should be afforded the opportunity to attempt to prove that appellees' conduct caused him to suffer severe mental and emotional distress. We find that appellant set forth sufficient facts in his complaint to overcome a ruling against him as a matter of law.

Finally, appellees maintain that, even if appellant's complaint sets forth a valid cause of action for intentional infliction of emotional distress, it is nonetheless barred by the applicable two year statute of limitations governing actions for personal injuries. 42 Pa.C.S.A. § 5524(2). We cannot decide this claim on the record before us. The order of the trial court in this case sustained appellees' preliminary objections raising the bar of the statute of limitations regarding the claim for the alienation of a child's affections. It appears from the trial court's opinion, that the objection was sustained upon a determination that appellant's son was not a minor at the time suit was instituted. There is no indication, however, that the trial court considered whether the two year statute of limitations barred an action for the

intentional infliction of emotional distress, nor can we determine whether appellees advanced this argument in the court below.

 We point out that the statute of limitations applicable to actions for personal injuries is a waivable defense. *Bellotti v. Spaeder*, 433 Pa. 219, 249 A.2d 343 (1969); *Leister v. Miller*, 376 Pa. 452, 103 A.2d 656 (1954); *Thompson v. Southeastern Pennsylvania Transportation Authority*, 280 Pa.Super. 193, 421 A.2d 471 (1980), and thus, it should not have been raised by preliminary objection. Pa. R.C.P. 1017(b)(4). The statutory limitation is an affirmative defense that is properly raised by New Matter in a responsive pleading. Pa.R.C.P. 1030; *Blumer v. Dorfman*, 447 Pa. 131, 289 A.2d 463 (1972); *Royal Oil & Gas Corp. v. Tunnelton Mining Co.*, 444 Pa. 105, 282 A.2d 384 (1971). Accordingly, appellees' preliminary objections raising the statute of limitations did not warrant dismissal of the complaint in this case. *Blair v. Guthrie Development Corp.*, 305 Pa.Super. 292, 451 A.2d 537 (1982).[3]

Moreover, it is not clear from the present record that appellant filed his claim after the statute of limitation had expired. Reading the averments in paragraphs 52 and 53 together, it can be inferred that appellees engaged in a

---

**3.** Appellant herein did not object to the procedure utilized by appellees in raising the statute of limitations. There is some confusion in recent case law concerning whether the failure to object constitutes a waiver of the error, thereby permitting the appellate court to consider, on its merits, the issue improperly raised by preliminary objection. *See, Conaway v. 20th Century Corp.*, 491 Pa. 189, 420 A.2d 405 (1980); *Duquesne Slag Products v. Lench*, 490 Pa. 102, 415 A.2d 53 (1980); *Sayne v. Wylie*, 296 Pa.Super. 134, 442 A.2d 694 (1982). Nonetheless, in the instant case, we are confronted with a situation wherein the trial court's order regarding the limitation issue is unclear. Moreover, the record contains insufficient facts to allow a determination on that issue. Our court has reviewed the limitations claim raised by preliminary objection only in cases where the issue was briefed or argued by the parties and considered by the trial court. *See Cooper v. Downington School District*, 238 Pa.Super. 404, 357 A.2d 619 (1976); *Bickell v. Stein*, 291 Pa.Super. 145, 148 n. 2, 435 A.2d 610, 612 n. 2 (1981); *Donnelly v. DeBourke*, 280 Pa.Super. 486, 494 n. 5, 421 A.2d 826, 830 n. 5 (1980), *overruled on other grounds in Bond v. Gallen*, 292 Pa.Super. 207, 437 A.2d 7 (1981).

continuing course of conduct designed to influence Joseph to stay away from his father.

Order affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

WIEAND, J., files a concurring opinion.

WIEAND, Judge, concurring:

The issue in this difficult case is whether a father has a cause of action against a sister and brother-in-law for inducing a son to reject his father and refuse his father's entreaties to return to the father's home.

I agree fully with the majority that the appellant father cannot maintain an action for the mere alienation of his son's affections. Because the reasons for disallowing such a cause of action are sound, I would not circumvent them by allowing a similar action under the guise of a tort action for intentionally inflicted emotional distress.

However, I would hold that where there is an intentional interference with a parent's custody of his or her child, the injured parent is entitled to a remedy. Interference with custody rights of a parent has been recognized as a tort by the Restatement (Second) of Torts § 700 as follows:

> One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent.

Under this rule, liability arises from interference with the parental relationship. See: *Wood v. Wood,* 338 N.W.2d 123 (Iowa 1983); *Kramer v. Leineweber,* 642 S.W.2d 364 (Mo. Ct.App.1982); *Plante v. Engel,* 124 N.H. 213, 469 A.2d 1299 (1983). See also: *Kajtazi v. Kajtazi,* 488 F.Supp. 15 (E.D. N.Y.1978); *Brown v. Brown,* 338 Mich. 492, 61 N.W.2d 656 (1953), *cert. denied,* 348 U.S. 816, 75 S.Ct. 27, 99 L.Ed. 644 (1954); *LaGrenade v. Gordon,* 46 N.C.App. 329, 264 S.E.2d 757 (1980). There is no requirement that the plaintiff-parent have a custody order or that the defendant be a parent

or spouse. See: *Brown v. Brown, supra; Kramer v. Leineweber, supra; Plante v. Engel, supra.* The right of action is based not only on the loss of the child's services but also on the parent's right to the companionship of the child. See: *Kajtazi v. Kajtazi, supra; Wood v. Wood, supra.* Damages recoverable in such an action include the loss of society of the child and mental distress. Restatement (Second) of Torts § 700, comment g. See: *Kramer v. Leineweber, supra; Kajtazi v. Kajtazi, supra.*

Does the complaint in the instant case aver a cause of action for interfering with the appellant's custodial rights? An order granting a demurrer cannot be entered unless the complaint discloses on its face that the plaintiff's claim cannot be sustained because the law will not permit recovery. If there is any doubt, the doubt must be resolved in favor of overruling the demurrer. *Wicks v. Milzoco Builders, Inc.,* 503 Pa. 614, 623, 470 A.2d 86, 91 (1983), quoting *Gekas v. Shapp,* 469 Pa. 1, 5–6, 364 A.2d 691, 693 (1976); *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 500, 450 A.2d 36, 37 (1982).

Applying this standard to the averments of the complaint in the instant case, I am forced to conclude that preliminary objections in the nature of a demurrer were improperly sustained. Appellant, after being divorced from his wife, agreed that his infant son should be raised by appellant's sister and brother-in-law in Avella, Pennsylvania because appellant was on foreign assignment for the United States Government. It has been alleged in the complaint that appellant faithfully sent money for the support of his son, purchased insurance for his son and established a trust fund for him. Appellant retired in 1972 and moved back to Avella. There he maintained a close relationship with his son, but his son continued to live with appellant's sister and her husband. A dispute arose when appellant requested that his son return to the home of his father. It will serve no good purpose to recite here the many factual averments pertaining to this dispute. They have been alleged fully in the complaint. Suffice it to quote paragraph 53 of the complaint where it is alleged:

That the co-defendants have enticed and persuaded the plaintiff's son to stay away from his father, to have nothing to do with him and in particular to leave his father's home and not to return although they know it is the wish and desire of the father to have his son with him.

These averments are sufficient to state a cause of action.

It may well be, in view of the history and relationship which has existed among the parties for such a long period of time, that appellant will be unable to prove a cause of action. His claim, based as it is on highly emotional family issues, will certainly be controversial. It may also be, as appellees assert, that appellant has too long delayed seeking redress in the courts. The difficulties with which appellant will undoubtedly be faced in proving his cause of action, however, do not permit a summary disposition which would deprive him of his day in court.

Therefore, I concur in the decision to reverse and remand for further proceedings. However, the cause of action stated, in my opinion, is for inducing a child not to return to the custody of his parent. I would not recreate a cause of action for alienation of affections by calling it an intentional infliction of emotional distress.