## Lefever v. Lancaster Leaf Tobacco Company of Pennsylvania Inc.

*Samuel M. Mecum,* for plaintiff.
*Robert M. Frankhouser,* for defendant.

GEORGELIS, *J.,* December 1, 1987—Before the court are defendant's preliminary objections to plaintiff's complaint. Both parties have filed briefs, and the objections are, therefore, ready for disposition. For the reasons stated below, they will be sustained.

### FACTS

The relevant facts, as alleged in the complaint, are the following. Plaintiff began his employment with defendant in 1956, and, in 1976 while on the

job, he sustained a back injury, for which he underwent surgical procedures in 1976 and 1977. Sometime late in 1977, he returned to work, and, on January 3, 1978, while on the job, he re-injured his back, after which he returned to work even though he continued to experience back pains.

On September 28, 1978, plaintiff underwent a third surgical procedure, from which he was not able to return to work on a full-time basis until October 11, 1983. During this time, he filed for and received worker's compensation benefits.

On May 5, 1986, while on his job, he again injured his back, and, on June 27, 1986, he filed for worker's compensation benefits which were awarded on January 27, 1987. After being released to return to work on an unrestricted basis by his doctor, he did so on July 7, 1986, and was advised that another employee had been hired to fill his job. On that day, he was given other work to perform, and, on July 8, he was handed a "layoff notice," a copy of which is attached to the complaint as exhibit "A." Plaintiff believes that his "layoff" was due to his back injuries and to his history of collecting worker's compensation benefits and that defendant would not re-hire him because of worker's compensation insurance premiums.

After his "layoff," plaintiff filed for and received unemployment compensation benefits, his claim for them being uncontested by defendant. Subsequently, he has attempted unsuccessfully to locate other employment. He believes this is due to his back injuries, which he has disclosed to prospective employers.

## COUNTS OF THE COMPLAINT

Count I of the complaint alleges that plaintiff was wrongfully discharged in retaliation for the filing of

his worker's compensation claims and that, since "it is the public policy in Pennsylvania that workers injured on the job receive compensation and reimbursement for such injuries quickly regardless of fault," his discharge was against public policy and therefore remediable under Pennsylvania law. Count II of the complaint alleges that, because defendant's conduct in discharging plaintiff was willful, deliberate, extreme, outrageous and in reckless disregard for his rights, it gives rise to a cause of action for intentional infliction of emotional distress. Count III alleges that defendant's conduct in discharging plaintiff was willful, intentional and outrageous, giving rise to a cause of action for punitive damages.

## PRELIMINARY OBJECTIONS

Defendant's preliminary objections are in the nature of demurrers to all three counts of the complaint. With regards to count I, defendant's objection alleges that, because plaintiff was not denied worker's compensation benefits, he has failed to state a cause of action in wrongful discharge. In its brief as to this objection, it argues that the complaint alleges plaintiff's "layoff" because of his being replaced and that, because there is no law preventing an employer from replacing an absent employee, no public policy has been violated.

With regards to count II, defendant argues that, because plaintiff has failed to set forth what specific acts of defendant were extreme and outrageous, he has failed to state a cause of action for intentional infliction of emotional distress. With regards to count III, it argues that, because plaintiff has failed to set forth what specific acts of defendant were extreme and outrageous, he has failed to state a cause of action for punitive damages.

## DISCUSSION

*Demurrer*

As noted earlier, all defendant's preliminary objections are in the nature of demurrers. It is well settled Pennsylvania law that, for purposes of a demurrer, the moving party is deemed to have admitted all well pleaded material facts in the complaint, as well as all inferences which are reasonably deducible therefrom, but not conclusions of law. *Bartanus v. Lis*, 332 Pa. Super. 48, 480 A.2d 1178 (1984). In *Bartanus*, at 52, 1180, the Superior Court announced the standard for considering preliminary objections as follows:

"In considering preliminary objections in the nature of a demurrer, the question presented is whether, on the facts averred, the law says with certainty that no recovery is possible. . . . (citations omitted). The law does not provide a 'magic formula' to determine the sufficiency of a plaintiff's complaint, however, the law is clear that a demurrer can only be sustained in a case free from doubt." (citations omitted).

This standard is so rigorous that Pennsylvania courts have cautiously and reluctantly applied it to dismiss causes of action. If any error is to be made or any bias encountered, it is to be in favor of overruling the preliminary objections "[w]here a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it (citations omitted)." *Vattimo v. Lower Bucks Hospital Inc.*, 502 Pa. 241, 244, 465 A.2d 1231, 1232-3 (1983).

*Count I — Wrongful Discharge*

As noted above, count I of the complaint alleges that plaintiff was wrongfully discharged in retaliation for the filing of his worker's compensation

claims. In its preliminary objection to this count, defendant argues that, since plaintiff has not been denied worker's compensation benefits, he has not stated a cause of action for wrongful discharge. In support of this objection in its brief, defendant argues that plaintiff was fired because he had been replaced. The first of these two arguments misses the thrust of count I, which is not based on a denial of benefits, and the second presents a speaking demurrer in that it improperly alleges a fact by way of a demurrer.

For purposes of its demurrer to count I, defendant admits all of its well pleaded material facts, and, therefore, admits that plaintiff was discharged in retailiation for filing his worker's compensation claims. See *Bartanus,* supra. Consequently, the issue posed by defendant's objection to count I is: Does a discharge in retaliation for filing a worker's compensation claim violate public policy and thereby create a cause of action for wrongful discharge?

The parties do not dispute that plaintiff's employment was at-will. The complaint does not allege a specific term of his employment, and Pennsylvania presumes, in such a situation, at-will employment, i.e. either party may terminate it at-will, at anytime, for any reason or for no reason at all. *Fawcett v. Monongahela Railway Co.,* 391 Pa. 134, 139, 137 A.2d 768, 771 (1958); *Darlington v. General Electric,* 350 Pa. Super. 183, 188, 504 A.2d 306, 308-9 (1986).

Before 1974, remedies for termination of at-will employment were limited to those available under contract law, because even at-will employment is formed by contract. Id. at 189, 308. In 1974, the Pennsylvania Supreme Court, in *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974), added to the available contractual remedies

by creating the tort of wrongful discharge where an at-will employment is terminated in violation of a public policy. It held, at 184-85 and 180:

"We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at-will has no right of action against his employer for wrongful discharge."

Since *Geary,* the struggle before Pennsylvania's courts has been the often unachieved task, which exists each time our courts create a new cause of action, of controlling its growth. A number of our courts has examined and discussed public policy and attempted to define it and those violations of it which would qualify as remediable under *Geary.* Our Superior Court perhaps best stated the dilemma in *Cisco v. United Parcel Services Inc.,* 328 Pa. Super. 300, 476 A.2d 1340 (1984), when, at 306, 1343, it said:

"A clear statement of what public policy actually consists is hindered by its varying manifestations. As the Supreme Court of New Jersey observed:

" 'The sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rules, regulations, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy . . . absent legislation, the judiciary must define the cause of action in case-by-case determinations.' (citations omitted)."

Permeating all of these examinations have been the courts' efforts to maintain the definition of public policy as narrowly as possible and to reluctantly allow recovery based on novel theories of public policy. See *Darlington,* supra, at 208-9, 318-19, citing *Bruffett v. Warner Communications Inc.,* 692 F.2d

910 (1982); *Callahan v. Scott Paper Co.*, 541 F. Supp. 550 (E.D. Pa., 1982); *Bonham v. Dresser Industries Inc.*, 569 F.2d 187, 195 (3rd Cir., 1977); and *O'Neill v. ARA Services,* 457 F. Supp. 182, 187 (E.D. Pa., 1978). The *Darlington* court even went as far as to state, at 211, 320: "Inherent in the at-will presumption itself is an important public policy —. that the employer should be master of his business."

Armed with this background, we now examine the alleged public policy violation sub judice, for which plaintiff believes he is entitled to recover in wrongful discharge. The issue, i.e., whether a discharge in retaliation for filing a worker's compensation claim violates public policy, although not of first impression in the commonwealth, has not been resolved by either of our appellate courts. Our research uncovered two Pennsylvania and a number of other states' decisions on the issue.

The Pennsylvania cases, *Butler v. Negley House Inc.* 20 D.&C.3d 543 (1981), and *Rettinger v. American Can Co.,* 574 F. Supp. 306·(M.D. Pa., 1983), on which plaintiff relies, both found public policy violations for discharges in retaliation for filing worker's compensation claims, but the case law in other states appears to be divided on the issue. Those states, which have held that such discharges violate public policy, have adopted the position that, since worker's compensation legislation is intended to provide benefits to injured employees, allowing such retaliatory discharges thwarts that intent and thereby violates public policy. See e.g., *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E. 2d 425 (1973); *Kelsay v. Motorola Inc.,* 74 Ill. 2d 172, 384 N.E. 2d 353 (1978); *Brown v. Transon Lines,* 284 Ore. 597, 588 P. 2d 1087 (1978); and *Sventko v.*

*The Kroeger Co.,* 69 Mich. App. 644, 245 N.W. 2d 151 (1976).

Those states, which have held that such discharges do not violate public policy, have adopted the position that, if the legislature intended the availability of a wrongful discharge remedy, it would have been included in the worker's compensation legislation, and that, since it is not, it is not available. See e.g., *Segal v. Arrow Industries Corp.,* 364 So. 2d 89 (Fla. 3d DCA, 1978); *Dockery v. Lampart Table Co.,* 36 N.C. App. 293, 244 S.E. 2d 272 (1978); and *Christy v. Petrus,* 365 Mo. 1187, 295 S.W. 2d 122 (1956). The *Butler* and *Rettinger,* both supra, courts effectively adopted the former of these two positions.

There are a number of reasons for which we believe that a discharge in retaliation for the filing of a worker's compensation claim is not violative of public policy and does not state a cause of action in wrongful discharge. First, and foremost, we believe that, if such a remedy is to be made available, it must be done by our Legislature. The intent of Pennsylvania's worker's compensation legislation is to prevent employers from obtaining the upper hand in keeping employees from receiving benefits for injuries received on the job. Even though we agree that it may be a natural next step to assume that the legislation is also intended to prevent employers from getting the upper hand in retaliatory discharges, it is just as natural to assume that the Legislature does not so intend. Our worker's compensation statute is very comprehensive legislation, and we believe that, if our Legislature intended to cover the retaliatory discharge situation within it, it would have explicitly done so, especially in light of the fact that such a discharge is a relatively obvious potential scenario in these kinds of cases.

Second, if such a remedy is not to be left to our Legislature, it must be left to our appellate courts. Our Superior Court, as noted above, has identified the sources of public policy, which may limit an employer's right of discharge, as legislation, judicial decision and administrative rules, regulations or decisions. *Cisco,* supra, at 306, 1343. Here, as already noted, there is no applicable legislation, and we are not aware of, nor has plaintiff called our attention to, any applicable administrative rules, regulations or decisions.

Plaintiff does, however, present us with judicial decisions. He relies, as noted above, on *Butler* and *Rettinger,* both supra. However, since those decisions are not controlling on this court, we are not bound to follow them. If a public policy violation for a discharge in retaliation for filing a worker's compensation claim is to be ingrained into the law of wrongful discharge by Pennsylvania's courts, then, we choose to leave the ingraining to our appellate courts.

We believe that our appellate courts have provided us with guidance in exercising this kind of judicial restraint on this issue. For example, our Supreme Court, in *Geary,* supra, which was the genesis of the wrongful discharge tort, rejected a cause of action by an employee allegedly discharged in retaliation for voicing his disapproval about a dangerous product made by his employer. Our Superior Court, in *Yaindl v. Ingersoll-Rand Co.,* 281 Pa. Super. 560, 422 A.2d 611 (1980), held that public policy was not violated for discharging an employee who pointed out safety defects in his employer's product.

Additionally, as noted above, our Superior Court, in *Darlington,* supra, described the recognized public policy grounds as "narrow" and noted the reluc-

tance of Pennsylvania courts to allow recovery based on novel theories of public policy (at 208-9, 318-9). The *Darlington* court, also as noted above, held that: "Inherent in the at-will presumption itself is an important public policy — that the employer should be master of his business." (at 211, 320). In the instant case, we believe that defendant's conduct in replacing and subsequently discharging plaintiff falls within the gamut of "the employer should be master of his business."

For all of the above reasons, we do not believe that a discharge in retaliation for the filing of a worker's compensation claim violates public policy, and, consequently, we do not believe that plaintiff has sufficiently stated a cause of action for wrongful discharge. See *Bartanus,* supra. Accordingly, defendant's preliminary objection to count I of plaintiff's complaint will be sustained.

*Counts II and III — Emotional Distress and Punitive Damages*

As noted above, plaintiff's counts II and III allege that, because defendant's conduct in discharging him was willful, deliberate, extreme and outrageous, he was entitled to emotional distress and punitive damages, respectively. Defendant, in its objections to these two counts, argues that plaintiff has failed to state a cause of action for such damages. In light of our decision that plaintiff has failed to state a cause of action for his wrongful discharge, counts II and III of plaintiff's complaint cannot stand, and defendant's preliminary objections to them will, therefore, be sustained.

Accordingly, we enter the following

### ORDER

And now, December 1, 1987, for all of the reasons stated in the foregoing opinion, defendant's prelimi-

nary objections to counts I, II, and III of plaintiff's complaint are sustained. Plaintiff's complaint is dismissed.