## Abadie v. Riddle Memorial Hospital

*John M. Hickey,* for plaintiff.
*Susan L. Wallack,* for defendant.

KEELER, *J.,* July 18, 1990 — Plaintiff filed suit arising out of an incident which occurred on February 3, 1989, at Riddle Memorial Hospital located in Delaware County, Pennsylvania. The original complaint sounded in the tort of intentional infliction of emotional distress and punitive damages. Preliminary objections in the nature of demurrers to the two counts of plaintiff's complaint were timely filed. After a thorough review of the pleadings, associated documents and the applicable case law, we entered an order sustaining the demurrers and granting plaintiff leave to amend.

Plaintiff availed herself of the opportunity to replead the case. While many of her allegations

remained unchanged, plaintiff supplemented her complaint by adding an allegation "that the hospital employees intentionally abandoned her when the plaintiff was in the zone of danger. . ." Amended complaint at paragraph 14. Once again preliminary objections were filed. Scrutiny of the amended pleadings, the preliminary objections and the plaintiff's response compel the court to dismiss plaintiff's amended complaint. Due to the unusual nature of the case and the complexities of the law, we feel it appropriate to explain the rationale underlying this decision.

Marilyn Abadie, plaintiff, went to Riddle Memorial Hospital in order to undergo a lower gastrointestinal X-ray. As the complaint alleges, "she was placed on a high, cold table top with an intervenous [sic] needle in her arm undrapped [sic] but for a hospital gown." Complaint and amended complaint at paragraph 3. It is further alleged that plaintiff was emotionally fragile and suffered from severe anxiety disorders. While waiting alone in the X-ray room:

"[S]he heard loud roaring noises followed by loud, vulgar and common language and laughter. This caused the plaintiff to become extremely upset and on the verge of collapse. . . .

"It was later discovered that what had actually transpired at the time and place aforesaid was that a female employee of the defendant had a birthday or similar event. As a gift other employees of the defendant had hired a male dancer to strip naked. This particular dancer started his act dressed in a gorilla costume and as part of his act was mimicking that animal's sounds. The common language and laughter that followed came from employees of the defendant who were cheering as the 'dancer' exposed his body." Complaint and amended complaint at paragraphs 4 and 5.

Defendants originally demurred asserting that Pennsylvania jurisprudence does not recognize the tort of intentional infliction of emotional distress. Both parties briefed this particular issue at length. However, the court's review of the case law leads to an ambiguity. Several Superior Court decisions suggest that Pennsylvania has adopted the existence of intentional infliction of emotional distress as a cognizable cause of action. See *Stoddard v. Davidson,* 355 Pa. Super. 262, 513 A.2d 419 (1986); *Bartanus v. Lis,* 332 Pa. Super. 48, 480 A.2d 1178 (1984). See also, Restatement (Second) of Torts §46 (1965) (outrageous conduct causing severe emotional distress). Yet, a more recent Supreme Court decision specifically notes that it "has acknowledged but has never had occasion to specifically adopt section 46 as the law in Pennsylvania." *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 185, 527 A.2d 988, 988 (1988). (footnote omitted) See also, *Ford v. Isdaner,* 374 Pa. Super. 40, 542 A.2d 137 (1988). The holding in *Kazatsky* affirmed a compulsory non-suit and declared that recovery on a claim of intentional infliction of emotional distress is predicated on proof of the alleged emotional distress by competent medical evidence. *Id.* at 197, 520 A.2d at 995. Despite the express lack of precedent establishing a cause of action under the rubric of the tort for intentional infliction of emotional distress, the *Kazatsky* case certainly does not preclude efforts to sustain such an action. See generally, *Papieves v. Lawrence,* 437 Pa. 373, 376-7, 263 A.2d 118, 120 (1970) ("[e]very cause of action in tort . . . was once a novel claim, and the absence of Pennsylvania authority . . . is not an end to the issue").

The Restatement upon which this tort is based provides as follows:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts §46(1) (1981).

Therefore, the central essential element necessary to establish a cause of action requires a showing of outrageous conduct on the part of the tort-feasor. Indeed, the comments to the Restatement describe such conduct in detail.

*"Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

There is no occasion for the law to intervene in every case where some one's [sic] feelings are hurt." Restatement (Second) of Torts §46, comment d, quoted in *Kazatsky, supra* at 190-1, 527 A.2d at 991-2.

Given plaintiff's allegations, and despite the plaintiff's unusual sensitivities, we cannot say that the conduct of the hospital personnel, who were located in a separate room, was so egregious or extreme as to legitimate this cause of action. Moreover, the actions of defendant's personnel do not admit of a finding that their conduct was calculated to cause the type of distress which the plaintiff allegedly sustained. Absent intent, this case cannot go forward.

In her amended complaint, the suggestion of abandonment seems to be the focus of the wrongful conduct. Defense counsel addressed the issue of abandonment and carefully noted that causes of action for abandonment in the context of medical treatment are limited to particular circumstances all of which involve the need for immediate care. See generally, Anno., *Physician — Abandonment of Case,* 57 ALR 2d 432 (1958). Apparently Pennsylvania's appellate courts have not had occasion to pass directly upon this theory. Moreover, plaintiff's counsel claims that the case does not charge defendants with abandonment but rather that abandonment was part and parcel of defendant's negligence. Unfortunately, the damages pleaded suggest only mental anguish as the injury sustained.

At best, this case might be justified under a theory of negligent infliction of emotional distress. Nevertheless, in Pennsylvania, such a case must be grounded upon negligent conduct which results in physical manifestations of harm. See *Crivellaro v. Pennsylvania Power & Light Co.,* 341 Pa. Super.

173, 180-1, 491 A.2d 207, 210-1 (1985); *Cathcart v. Keene Indus. Insulation,* 324 Pa. Super. 123, 151-2, 471 A.2d 493, 507-8 (1984). Allegations of physical harm are conspicuously absent from plaintiff's complaint and amended complaint.

Certainly, hospital·employees should be cognizant of the anxieties and concerns of individuals present on the premises for surgical interventions. For this lack of awareness, those employees may be faulted for poor judgment. At the same time, the court recognizes that health-care professionals are engaged in a rigorous and emotionally taxing occupation. As such, they too are permitted outlets which allow them to continue working under highly pressurized conditions. See Bosk, C., *Forgive and Remember: Managing Medical Failure* (1979) (gallows humor and other forms of release act as coping mechanisms for health-care professionals working in a hospital environment); Fox, R., and Swazey, J., *The Courage to Fail — A Social View of Organ Transplants and Dialysis* (2d ed., rev. 1979) (same). See also, Freud, S., *Humor,* in Collected Papers V at 215-21 (Hogarth Press, London 1950).

Not every perceived wrong by an individual entitles that individual to compensation. This situation does not suggest that the defendant's employees transcended all bounds of decency in their birthday celebration. Neither the law nor the present facts would justify submission of this case to a jury to address the wrong purportedly perpetrated upon the plaintiff.

Inasmuch as the claim for punitive damages is derived from the claim for intentional infliction of emotional distress, the court's disposition of the former dictates a consistent disposition of the latter. In light of the foregoing, the court granted the

demurrers filed by the defendant as to counts I and II of both the plaintiff's complaint and amended complaint.

## ORDER

And now, July 18, 1990, upon consideration of defendant's preliminary objections to plaintiff's amended complaint and plaintiff's response thereto, as well as the memoranda filed, it is hereby ordered that defendant's preliminary objections are sustained and plaintiff's amended complaint is dismissed.