570 A.2d 552

Joseph E. COLEMAN, Appellant,

v.

PHILADELPHIA NEWSPAPERS, INC., F. Gilman Spencer, Richard Aregood, Zachary Stalberg and Don Haskin.

Superior Court of Pennsylvania.

Argued Dec. 12, 1989.

Filed Feb. 21, 1990.

J. Shane Creamer, Philadelphia, for appellant.

Samuel E. Klein, Philadelphia, for appellee.

Before BROSKY, WIEAND and JOHNSON, JJ.

JOHNSON, Judge.

Joseph E. Coleman, a public official, appeals from the trial court's denial of his new trial request following a jury defense verdict in a defamation suit. We are asked to determine whether the court abused its discretion by trying the issues of falsity and actual malice separately from—and prior to—the remaining issues. We must also determine whether, as a result of bifurcation, Coleman was precluded from presenting evidence of the publisher's belief regarding the alleged defamatory nature of certain newspaper articles. We conclude that the court acted well within its sound discretion in ordering bifurcation of the falsity and fault issues and that Coleman was not prohibited from inquiring into the publisher's state of mind. Accordingly, we affirm.

On March 25, 1983, Coleman filed a defamation suit against Philadelphia Newspapers, Inc. (owner of the Philadelphia Daily News), F. Gilman Spencer, Richard Aregood, Zachary Stalberg and Don Haskin, hereinafter "the Daily News." This suit followed the Daily News' publication of two editorial remarks regarding Coleman's alleged practice, as President of the Philadelphia City Council, of hiring his relatives to fill city jobs. A jury trial was held between January 5, 1988 and January 27, 1988. At the outset, the court ordered that the trial be bifurcated. The court determined that the parties would first litigate the issues of whether the complained of statements were true and whether the publisher acted with actual malice in the publication of these statements. Thereafter, the parties would litigate the issues of the defamatory character of the publication and damages. After the first phase of trial, lasting twelve

court days, the jury deliberated on the issues of the truth of the statements and actual malice. It found against Coleman on the issue of actual malice, leaving unanswered the question of whether the statements were true. Coleman filed a post-trial motion seeking a new trial. On February 27, 1989 the court denied Coleman's post-trial motion and entered judgment upon the verdict in favor of the defendants. On appeal, Coleman requests that we consider whether the trial court erred:

I. IN BIFURCATING IN THE TRIAL OF A DEFAMATION CASE THE ISSUES OF FALSITY AND MALICE FROM TRIAL ON THE ISSUES OF DEFAMATION AND DAMAGES?

II. IN EXCLUDING EVIDENCE OF THE PUBLISHERS' STATE OF MIND REGARDING THE DEFAMATORY CHARACTER OF THE FALSE ARTICLES NOTWITHSTANDING ITS RELEVANCE TO THE ISSUE OF CONSTITUTIONAL MALICE?

III. IN ITS CHARGE TO THE JURY BY INSTRUCTING THE JURY NOT TO CONSIDER MULTIPLE, CUMULATIVE, NEGLIGENT ACTS OF THE DEFENDANTS AS IT RELATED TO THE ISSUE OF MALICE?

IV. IN REFUSING TO GRANT A NEW TRIAL BASED ON THE TRIAL COURT'S BIAS AGAINST THE PLAINTIFF AS EVIDENCED BY THE ENTIRE RECORD?

At issue I, Coleman essentially argues that the court erred by bifurcating the trial into two phases, liability and damages. As an underlying component of this argument and at issue II, Coleman contends that bifurcation of the trial prejudiced him because he was thereby precluded from presenting relevant evidence of the defamatory nature of the Daily News' statements. We find these contentions to be meritless.

As our distinguished former colleague, the Honorable Gwilym A. Price, Jr., has established, a judge invested with the responsibilities of trial may on his own motion

order a separate trial on any claim or issue if the resolution of that claim or issue will expedite the adjudication of other claims. *Kaiser v. Meinzer,* 272 Pa.Super. 207, 216, 414 A.2d 1080, 1085 (1979), *appeal dismissed* 498 Pa. 136, 445 A.2d 104 (1982). Rule 213 of the Pennsylvania Rules of Civil Procedure provides in pertinent part:

RULE 213. CONSOLIDATION, SEVERANCE AND TRANSFER OF ACTIONS AND ISSUES. ACTIONS FOR WRONGFUL DEATH AND SURVIVAL ACTIONS

. . . .

(b) The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues.

Pa.R.C.P. No. 213(b), 42 Pa.C.S.

Coleman contends that the defamatory character of a publication is an issue which cannot be clearly delineated as a liability or a damage issue. He argues that the defamatory character of the publication is inexorably interwoven with both the liability issue and the damage issue in a libel action. He places heavy reliance on *Stevenson v. General Motors Corp.,* 513 Pa. 411, 521 A.2d 413 (1987) in asserting that bifurcation should be carefully and cautiously applied and be utilized only in a case where prejudice will be avoided. We find nothing inconsistent between the action of the trial judge in the case now before us and that of the trial judge in *Stevenson.* In that bifurcated products liability action, our supreme court was called upon to review the decision of a trial judge granting a new trial, where the trial court upset a jury finding of liability based upon evidence adduced during the subsequent damage phase of the case.

In *Stevenson,* our supreme court was called upon to decide whether a jury's finding of liability—made at the close of the liability phase of a bifurcated proceeding—is unassailable by the trial judge after the damage phase of

the trial. *Stevenson v. General Motors Corp.*, 513 Pa. at 415, 521 A.2d at 415. In concluding that it was not unassailable, the *Stevenson* court affirmed the decision of this court which had, in turn, affirmed the trial judge in granting a new trial. Although the court did express the opinion in a separate part of the decision, Part II, that a trial judge should be alert to the danger that evidence relevant to both issues may be offered at only one-half of the trial, the court did not condemn the trial court for its original decision to bifurcate. It did hold that the trial court's decision against bifurcation of the *new* trial was a reasonable exercise of its discretion. *Stevenson v. General Motors Corp.*, 513 Pa. at 423, 521 A.2d at 419. The trial judge did not violate the *Stevenson* principles in the case now before us.

Coleman also seeks to rely on Rule 224 of the Pennsylvania Rules of Civil Procedure in contending that the trial court improperly refused to permit the jury to consider evidence pertaining to the defamatory nature of the publications. That rule provides:

RULE 224. REGULATION OF ORDER OF PROOF

The court may compel the plaintiff in any action to produce all his evidence upon the question of the defendant's liability before he calls any witness to testify solely to the extent of the injury or damages. The defendant's attorney may then move for a non-suit. If the motion is refused, the trial shall proceed. The court may, however allow witnesses to be called out of order if the court deems it wise so to do.

Pa.R.C.P. No. 224, 42 Pa.C.S.

Although Rule 213(b) and Rule 224 each involve bifurcation, their purposes are clearly distinct and involve entirely different procedures. Rule 213(b) applies in cases such as the one here under review where the trial judge orders separate *trials* of distinct *issues* and the issues are submitted to the trier of fact—the jury—in stages. Under Rule 213(b), the jury actively deliberates on one or more issues, such as liability, before receiving any of the evidence on other issues, such as damages. Where Rule 224 is

invoked, the jury is in no way directly involved. Rule 224 permits the trial court to compel the plaintiff to produce all evidence of the defendant's liability, at the conclusion of which the defendant may then move for a compulsory non-suit. If the motion is refused, the trial *continues* before the trier of fact—the jury—without the jury having been called upon to deliberate up to that point. If the motion is granted, the jury is excused without having been called upon to deliberate at all.

Coleman does not direct us to that portion of the record where Rule 224, or the issue of the regulation of the order of proof, was a matter of review before the trial court as required under Pa.R.A.P. 2119(c), (e). There is reference, in the Brief for Appellant, to a portion of the court's charge, N.T. January 26, 1988 at 9.153 (R.R. Vol. IV at 1684a), which is not implicated by Rule 224. To the extent that Rule 224 may be said to have been applicable in these proceedings, we find no error or abuse of discretion by the trial judge, and we find that bifurcation was proper for the reasons here set forth.

The court's decision to bifurcate a trial will not be disturbed absent an abuse of discretion. *Sacco v. City of Scranton*, 115 Pa.Cmwlth. 512, 517, 540 A.2d 1370, 1372 (1988). Before ordering the separate adjudication of issues, the court should carefully consider the issues raised and the evidence to be presented to determine whether the issues, here liability and damages, are interwoven. *Stevenson v. General Motors Corporation*, 513 Pa. at 422–423, 521 A.2d at 419. Bifurcation is discouraged in those cases in which evidence relevant to both issues would be excluded in one portion of the trial and would result in prejudice to the objecting party. *Id.* However, bifurcation is strongly encouraged and represents a reasonable exercise of discretion where the separation of issues facilitates the orderly presentation of evidence and judicial economy, *Sacco v. City of Scranton*, 115 Pa.Cmwlth. at 517, 540 A.2d at 1373, *Swanger v. Pyles*, 204 Pa.Super. 72, 203 A.2d 488 (1964), or

avoids prejudice, *Stevenson v. General Motors Corporation*, 513 Pa. at 423, 521 A.2d at 419.

At all times material to this action Coleman was President of the Philadelphia City Council, thus a public figure, and the published remarks related to his performance in office. In order to prevail in his defamation action, Coleman was required to prove by clear and convincing evidence that the Daily News acted with knowledge that the statements were false or recklessly disregarded the truth of the statements, also known as actual malice. *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa. Super. 508, 546 A.2d 639 (1988).

Clearly, here, bifurcation of trial by focusing on the truth of the statements and the existence of actual malice in the first phase facilitated judicial economy, as the second phase relating to damages was actually avoided. In addition, bifurcation minimized the possibility of jury confusion in discerning what evidence of damage was relevant to the threshold question of whether actual malice existed. As the court suspected, counsel's feverish argument against bifurcation may have stemmed from a desire to garner sympathy from the jury in establishing liability by use of damage evidence. N.T. dated January 15, 1988 at pp. 4.65–4.66.

▆ It is equally clear that Coleman's case was not hindered in the least by the court's decision to bifurcate. First, Coleman's contention that as a result of bifurcation he was prevented from introducing evidence of the defamatory character of the objectionable statements is simply untrue. Although the court initially denied Coleman's attempts to introduce the testimony of several witnesses regarding their knowledge of the defamatory character of the publications, it reversed this decision.

In a discussion between counsel and the court, the court explained to counsel that it initially precluded the evidence because Coleman's questioning appeared to center around

the issue of damages. At that point, counsel conceded that his questioning may have been inarticulate, but argued that he was attempting to elicit this testimony to show that the publisher deviated from the requisite standard of care given the seriousness of the allegations. N.T. dated January 13, 1988 at pp. 50–53. Having considered this clear expression of counsel's intent, the court then preserved one witness' testimony, that of an editor, by having him questioned *in camera* and provided the defense with an opportunity to research the state of the law on the relevance of the defamatory character of a statement to actual malice. N.T. dated January 13, 1988 at pp. 53–67. Later, after being presented with the relevant case law, the court reconsidered its initial ruling and ordered that the editor's preserved testimony be admitted, as well as all other testimony on this issue. In conjunction with its determination that defamation evidence would be permitted, the court stated:

> It appears to me that the in-camera testimony by Mr. Spencer [a Daily News editor] would be admissible, and that the plaintiff would be permitted to call back the local editors of the Daily News, Mr. Stalberg and whoever else. [N.T. dated January 15, 1988 at p. 4.77].

> .     .     .     .     .

> You [Coleman] have won on that point. [N.T. dated January 15, 1988 at p. 4.78].

> .     .     .     .     .

> I am merely saying that Mr. Cramer [Coleman's counsel] may elicit from his witnesses the knowledge from them that they knew that this article, true or false, because that is the only question, true or false, would be harmful to his reputation. [N.T. dated January 15, 1988 at p. 4.81].

The defamation testimony is the only evidence which arguably could have pertained to both phases of trial. Coleman may not now complain that he was prevented from introducing defamation evidence when the court, acting carefully and prudently to ascertain the state of the law on this issue, preserved the testimony of the editor *and* permitted Cole-

man to call or recall any witness through whom Coleman intended to produce this defamation evidence. Not only did Coleman have the benefit of being able to adduce this evidence in proving liability, this evidence would also have been before the jury on the issue of damages. Merely not being permitted to present one's witnesses in the order desired is not the type of harm which would indicate an abuse of discretion by the court in the face of the obvious benefits to bifurcation. *See Sacco v. City of Scranton*, 115 Pa.Cmwlth. at 516–517, 540 A.2d at 1373; *Swanger v. Pyles*, 204 Pa.Super. at 73–75, 203 A.2d at 489–90.

Second, the relevance of this type of testimony under the facts presented in this case is tenuous. Actual malice may be demonstrated through direct evidence such as delving into the thoughts, opinions and conclusions of the publisher, *Herbert v. Lando*, 441 U.S. 153, 170, 99 S.Ct. 1635, 1645, 60 L.Ed.2d 115, 130 (1979), as well as inferentially, through unexplained distortions of the truth, the failure of the publisher to follow established procedures of investigation, the absence of any factual support for the statements, or the absence of any editorial review. *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa.Super. at 513–514, 546 A.2d at 642. The actual malice inquiry focuses upon whether the publisher *in fact* entertained serious doubts regarding the truth of the statements. *Stickney v. Chester County Communications, LTD.*, 361 Pa.Super. 166, 172, 522 A.2d 66, 69 (1987) quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). Needless conduct is not determined by an objective standard, whether a reasonably prudent person would have published the offensive statements or would have investigated further before publishing. *Id.* Thus, evidence is relevant on the issue of actual malice only where it is probative of the publishers' actual knowledge or flagrant disregard for whether the challenged statement is true.

While the failure to investigate a statement's truth before publication is not of itself sufficient to show actual malice, this court has recognized that where the charges are of a

serious nature and *no* attempt has been made to verify the complained of allegations prior to publication, then actual malice may be imputed to the act of publication. *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa.Super. at 513–514, 546 A.2d at 642; *Stickney, supra.* Statements are considered to be defamatory where they tend to affect the reputation of another, lower his esteem in the community, or deter others from associating with him. *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa.Super. at 522, 546 A.2d at 646. Only in this sense would the defamatory nature of a statement, when introduced to show the serious nature of an accusation which was published absent any investigation, have some probative value. However, this situation is not present in the case at bar. The offensive statements were not made without benefit of investigation but rather were based upon a fairly accurate and presumably well-researched article appearing only days before in the Daily News. As such, this evidence, while possibly probative of the prudence of the publisher's actions, was not probative of the Daily News' knowledge or reckless disregard of the truth of the remarks.

At issue III, Coleman complains that the court improperly charged the jury. He suggests that the court's continual reference to the distinction between carelessness and recklessness and an alleged misstatement on the role of negligence with regard to actual malice gave the jury the impression that they were unable to consider any of the Daily News' negligent acts. Specifically, Coleman objects to the following portion of the court's instruction:

> I am not suggesting that you can consider negligence on the part of the publishers in deciding whether or not there was constitutional malice.

N.T. dated January 26, 1988 at p. 9.177. In reviewing the sufficiency of a jury charge, we consider the charge in its entirety to determine whether error was committed, and if so, whether Coleman was prejudiced by the error. *Reilly v. SEPTA*, 507 Pa. 204, 231, 489 A.2d 1291, 1305 (1985). After

reviewing the entire jury charge, we find that Coleman's complaint is meritless.

The charge to the jury clearly and correctly explained the concept of actual malice and properly distinguished it from negligence and carelessness. The reference above is simply a reiteration of the jury's duty to determine whether the publisher's acts or omissions satisfy the actual malice standard. Reading the charge as a whole, as we must do, improves Coleman's position. Immediately preceding and following the complained of statement, the court specifically instructed the jury that they may consider exactly that conduct which Coleman now complains the court instructed could not be considered. The court stated in its comprehensive jury charge:

> You can consider if it has been proven in this case, the state of mind of the publishers of this article, if it has been established what their respective states of mind were at the time.
>
> .     .     .     .     .
>
> You can consider any clear departures from this publisher's journalistic procedures. You can consider the lack of prepublication investigation, the use of speculated accusations and the failure to utilize or employ effective editorial review.
>
> .     .     .     .     .
>
> You can also consider altered substance of an article by the publishers from an underlying source such as the Manoff or Eisner articles.
>
> You can consider, whether there was an attempt to verify false information that was published.
>
> You may consider the publishing of an article which the publishers subjectively realized at the time of the publication could not be true.
>
> .     .     .     .     .
>
> In addition, you may consider, either way, whether the article or articles were fabricated by the publishers [or]

were the products of the publisher's imagination *in considering whether this was constitutional malice.*

You may consider whether there was a prompt retraction, whatever that means, or a correction of an error. N.T. dated January 26, 1988 at pp. 9.176–9.178. The court's point in making the complained of excerpt was not that the publisher's "negligent" acts could not be considered but rather that these acts must be viewed in the context of constitutional/actual malice and not negligence. This was entirely correct and the jury charge when viewed in its entirety, some fifty-eight pages, does not evidence an error on the part of the court.

■ At issue IV, Coleman asserts that a new trial should be granted "under the totality of the circumstances and rulings in this case." He alleges general error with respect to the courts' rulings on: 1) bifurcation, 2) cross-examination of the parties, 3) the requirement that he prove mental anguish by expert testimony, 4) the "Epps affair", 5) evidentiary matters, and 6) the jury charge. Coleman's objections to bifurcation and to the jury charge have been discussed above and need not be addressed further. Coleman makes no specific objection to the court's evidentiary rulings or its rulings on cross-examination and therefore, these objections are waived. Pa.R.C.P. 227.1(b). *In re Estate of Hall,* 517 Pa. 115, 137, 535 A.2d 47, 58 (1987). In addition, Coleman's objections to the court's requirement that he present expert medical testimony and his objections to the "Epps affair" were not properly briefed for this court pursuant to Pa.R.A.P. 2119(e). Nonetheless, we will briefly address them.

With respect to the expert medical testimony, Coleman could not have been prejudiced by a preliminary ruling relevant only to the damage phase of the case which never occurred.

■ Next, Coleman's reference to the Epps affair apparently refers to the testimony of his daughter Stephanie. During trial, Stephanie testified that she was discriminated

against in her employment with the court of common pleas, presumably to counter allegations that she received favoritism in being considered for her position. The court, at side bar, expressed outrage at this allegation and both questioned Stephanie's veracity and gathered information relating to the experiences of other minorities in the court of common pleas. As to the first action by the court, Coleman does not contend that the court's unfortunate comment was overheard by the jury. However, a reporter did overhear the comment and published an article pertaining to it the next day in the Philadelphia Inquirer. Two copies of the article were found in the jury room. Prompted by Coleman's request for a mistrial, the court thoroughly polled the jurors who each assured the court that they had no knowledge of the article. Second, the employment information gathered by the court never reached the jury. Thus, while these isolated incidents may have been imprudent, they did not prejudice Coleman. The record does not demonstrate a systematic attempt to prejudice Coleman's case. In fact, the court when charging the jury emphasized that it was on the side of neither Coleman nor the Daily News and that its trial rulings and discourse with counsel should not be interpreted as reflecting a bias in favor of one party or the other. N.T. dated January 26, 1988 at pp. 9.180–9.181. Accordingly, on the basis of the entire record, a new trial is not justifiable.

Having found no merit to any of the issues raised on appeal, we affirm the order of the court of common pleas denying post-trial motions.

Order affirmed.