**Williams v. Mercedes-Benz of North America Inc.**

C.P. of Schuylkill County, nos. S-1746-1993, S-487-1994, S-565-1994.

*Jay N. Abramowitch* and *Bradley Davis Miller,* for plaintiffs.

*Albert J. Evans,* for plaintiff Ogrodnick and *Lawrence A. Durkin* for defendant Ogrodnick.

*James J. Dodd-o* and *Martin J. Cerullo,* for defendant Reading Anthracite.

*Eric L. Zagar* and *Kevin F. Berry,* for defendant James J. Curran Jr.

*W. Atlee Davis,* for defendant Caitlin Curran.

*Thomas P. Bracaglia,* for defendant Curran Estate.

*R. Mark Armbrust,* for settled defendants Mercedes-Benz, Daimler-Benz and Carson-Pettit.

STINE, *J.,* August 28, 2001—Pending before the court are various post-trial motions filed by plaintiffs and defendants emanating from a jury trial and verdict entered in this court on April 18, 2000. The case was heard before the court and a jury from April 10, 2000 through April 18, 2000, ultimately resulting in an award of damages to the plaintiffs, Frank C. and Margaret A. Williams, in the total amount of $7.8 million and in favor of the plaintiff, Theresa Ogrodnick, in the sum of $225,000. Pursuant to interrogatories submitted to the jury, liability was apportioned as follows: 90 percent to defendants Mercedes-Benz and Carson-Pettit;[1] nine percent to defen-

---

1. The initial pleadings in this proceeding named as defendants Mercedes-Benz of North America Inc., Mercedes-Benz Aktiengessel-

dant Reading Anthracite Company; and one percent to James J. Curran Jr.

The underlying cause of action resulted from a one vehicle accident which occurred on May 11, 1992, wherein the plaintiff, Frank C. Williams Jr., was seriously injured. At the time, Theresa Ogrodnick, who was employed as a chauffeur/nurse for James J. Curran Sr., was operating a 1979 Mercedes-Benz 450 SEL 6.9 automobile in a northerly direction on State Route 924 in Schuylkill County, Pennsylvania. In the process of operating the automobile, the Mercedes suddenly began accelerating on its own accord, and, despite defensive efforts by Ogrodnick, continued to accelerate as it approached a steep downhill grade to a speed in excess of 100 miles an hour. At the bottom portion of the hill the highway divided and as Ms. Ogrodnick attempted to turn the car onto the branch of the road that curved to the left, she lost control of the vehicle, the vehicle traveled along an embankment, spun through the air landing on its wheels, and then traveled northward and struck Mr. Williams. Mr. Williams had just exited the nearby woods and was standing approximately eight feet from the roadway. As a result of the accident, Mr. Williams sustained near-fatal injuries, he was rendered a paraplegic, and suffered various other head and bodily injuries. Ms. Ogrodnick suffered significant psychological trauma as a result of the incident.

---

schaft a/k/a Mercedes-Benz A.G., Daimler-Benz North American Corporation, Daimler-Benz Aktiengesselschaft a/k/a Daimler-Benz A.G. and Carson-Pettit Inc. Those defendants are hereafter referred to collectively as the Mercedes defendants.

Investigation into the cause of the accident revealed that the accident was the result of the failure of a plastic bushing, which resulted in the engine throttle linkage being jammed in the open position. The vehicle itself had been purchased new from Carson-Pettit Inc., an authorized Mercedes-Benz dealer, by the defendant, Reading Anthracite Company, in September of 1979, and was owned by RAC until February of 1989. In January 1984, Mercedes-Benz North America Inc. conducted a recall campaign, which included the subject Mercedes. The recall involved replacement of a defective bell crank bushing which could melt or deform under high temperature and cause the throttle to lock in the open position. At the time of the recall, RAC was listed by Mercedes-Benz as the owner of the vehicle in question, as well as two similar vehicles.

Testimony presented at trial revealed that in the course of conducting the recall campaign, Mercedes-Benz N.A. instituted a standardized recall procedure to have the vehicles repaired, at no cost to the owner. That recall procedure included the generation of a computerized list of vehicles and owners, listing the last known address of each owner, generating a voucher containing the owner's name and address, procedures for mailing the recall notice, and each envelope with notice being checked against the serial number of the computerized list for correct addresses. The testimony also revealed that if an envelope was returned by the post office as undeliverable, that fact is input into the recall campaign. Several notices of recall were sent to defendant RAC, none were returned as undelivered. The testimony elicited at trial

also demonstrated that at no time was the recall work performed on the vehicle in question by RAC, or any subsequent owner, and further reflected that employees from Carson-Pettit followed the recall procedure with postcards and telephone calls, without the recall work ever having been performed.

In February 1989, RAC transferred title of the vehicle to Caitlin Curran, a daughter of James J. Curran Jr., who had been a stockholder, director, and vice president of RAC during periods when the vehicle was owned by RAC. At the time of the accident, the vehicle was titled in the name of Caitlin Curran, however it was maintained under control of James J. Curran Jr., and used primarily in the transportation of James J. Curran Jr.'s elderly father, James J. Curran Sr. On the day of the accident, the automobile was being utilized for a leisure drive on behalf of James J. Curran Sr., being operated by Ms. Ogrodnick. As a result of the accident, the plaintiffs initiated causes of action against the Mercedes defendants, sounding in both strict liability and negligence, and against the remaining defendants on principles of negligence. Although separate actions were instituted by the Williams plaintiffs and the Ogrodnick plaintiffs, the causes of actions were consolidated for both pretrial and trial proceedings. In addition, the various defendants instituted cross-claims against the other defendants in the proceeding.

Following amendments to the initial complaint, and answers to the plaintiffs' complaint, the plaintiffs reached a settlement with the Mercedes-Benz defendants, resulting in the execution of a joint tort-feasor release between

the plaintiffs and the Mercedes defendants. Thereafter, Mercedes-Benz filed a motion with this court for partial discontinuance of the claims against the Mercedes-Benz entities, which was eventually granted by the court without opposition by any other party. This court granted the motion for discontinuance subject to the specific provision that any further claims raised by the plaintiffs against the remaining defendants were "subject to the credit provided to the non-settling defendants as set forth in the joint tort-feasor releases." Thereafter, the plaintiffs filed a motion to remove the Mercedes defendants from the caption of the plaintiffs' complaint, which was granted by the court on May 26, 1999. Following removal of the Mercedes defendants from the caption, the RAC and Curran defendants filed a motion with this court seeking to strike the discontinuance previously granted, or in the alternative, for leave to join the Mercedes entities as additional defendants, and for reconsideration of the order of May 26, 1999, deleting the Mercedes defendants from the case caption. In part, the defendants argued that since a judicial determination had not been made reflecting nonliability on the part of the Mercedes defendants, prudent judicial economy would necessitate reinstating the Mercedes defendants in order to ascertain the percentages of liability to all parties in order to effectuate the terms and conditions of the release. On April 5, 2000, this court entered an order disposing of those motions and directing that the Mercedes defendants be reinstated as defendants and appear in the case caption and on the verdict slip at trial.

## I. PLAINTIFFS' MOTIONS FOR JUDGMENT N.O.V. OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

Both the Williams plaintiffs and Ms. Ogrodnick have filed motions pursuant to Pa.R.C.P. 227 asserting their right to a judgment n.o.v., or, in the alternative, a new trial. Although so captioned, the essence of the arguments made by the plaintiffs are directed toward a judgment n.o.v. Because both plaintiffs assert identical arguments, we treat the post-trial motions collectively.

Initially, the plaintiffs argue that the trial court erred in returning the Mercedes defendants to the caption, which basically allowed the jury to assign proportionate liability necessary to effectuate the court order authorizing the discontinuance and the terms of the release between the plaintiffs and the Mercedes defendants. The plaintiffs argue that because the Mercedes defendants were granted a discontinuance in the action, that somehow the remaining defendants have waived all rights to any form of contribution from Mercedes defendants, and that the total amount of damages, regardless of the apportionment of liability by the jury, should be assessed against the remaining defendants. Because this court believes that judicial economy suggested having the degrees of liability determined at one time, and because the arguments of waiver by the plaintiffs run contrary to the court's discontinuance order, the rules of civil procedure, and to well-settled Pennsylvania case law regarding the respective rights existing among settling and non-settling joint tort-feasors, the court did not commit

error in returning the Mercedes defendants to the caption and verdict slip.

To that end we hereby incorporate this court's order of April 5, 2000, and the accompanying opinion [see attachment]. Furthermore, under controlling Pennsylvania law, the remaining non-settling defendants had an absolute right under Pennsylvania law to pursue their respective claims for contribution and/or indemnity against the Mercedes-Benz entities. *Bianculli v. Turner Construction Co.,* 433 Pa. Super. 237, 640 A.2d 461 (1994), *appeal denied,* 539 Pa. 655, 651 A.2d 541 (1994); *National Liberty Life Insurance Co. v. Kling Partnership,* 350 Pa. Super. 524, 504 A.2d 1273 (1986). The procedural ruling by the trial court here cannot be viewed as somehow supporting a waiver by the non-settling defendants, and thus to fail to have a determination of the degree of liability of all defendants at a single trial would only invite a subsequent action in indemnity or contribution by the remaining defendants. In *Bianculli, supra,* the Superior Court made it clear that the right of contribution (and indemnity) may be asserted during an original proceeding via joinder of additional defendants, or may be pursued in a separate action by an original defendant who has been held liable to the original plaintiff. Furthermore, the *Bianculli* court made it clear that Pennsylvania law permits a subsequent contribution and/or indemnity action whether or not the defendant was a party litigant in the first action where there was no adjudication on the merits of the contribution or indemnity claim. In addition to the economics of having the degrees of liability determined in one proceeding, the arguments of the plain-

tiffs evade practical logic. Because we have concluded that the non-settling defendants have not waived any right against the settling defendants, to somehow assess the entire verdict to the non-settling defendants would stymie the policy of our courts in promoting settlements and generate additional litigation. If the Mercedes-Benz defendants were not returned to this action, a subsequent contribution or indemnity action would follow. If the plaintiffs had received the entire award from the non-settling defendants, and the non-settling defendants prevailed against Mercedes, who executed the release with the plaintiffs in anticipation of being no longer subject to liability, the plaintiffs would only have to refund that money to the settling defendants because of the release. This court cannot contemplate that such a scenario would in any way promote resolution of lawsuits, or effectuate justice to a defendant who has in good faith settled his portion of the case with the plaintiff.

Nor do we find the plaintiffs' arguments with regard to the application of the recent Pennsylvania Supreme Court asbestos decision in *Baker v. ACandS Inc.,* 562 Pa. 290, 755 A.2d 664 (2000), to alter Pennsylvania's law of joint tort-feasor releases. The reality of the *Baker* decision does not change Pennsylvania law, nor does it allow this court to ignore the intent and agreement of the parties by converting the pro rata setoff into a pro tanto provision. As viewed by this court, the *Baker* decision deals with an issue totally unrelated to this case, that is how a pro tanto release should be construed under Pennsylvania law and the effect, if any, that the binding Johns Manville class action settlement would have on subse-

quent contribution claims by non-settling defendants. Unlike the releases at issue here, the settlement agreement entered into by the Bakers and the Manville trust specified that it was a pro tanto release, which would have only capped the setoff at the amount paid by the Manville trust to Bakers. We do not agree with the plaintiffs' argument that the *Baker* decision somehow stands for the proposition that the plaintiffs here are no longer bound by the "pro rata" set-off language in their releases because they settled for an amount that was later determined to be less than the share of liability attributable to the Mercedes defendants by the jury. To do so would convert negotiated and agreed upon pro rata setoffs into "pro tanto" setoffs, thus rendering all pro rata joint tortfeasor releases null and void. We cannot read into *Baker* the result desired by the plaintiffs. Clearly the releases executed by the plaintiffs in this case are replete with numerous statements indicating that the parties intended that the Mercedes-Benz defendants would have no liability above and beyond their settlement payment. Paragraph 8 of the release sets forth a pro rata setoff which was "intended to accomplish the prompt and permanent dismissal and disengagement of releasees from all litigation, to avoid inconvenience and expense to the releasees in the civil actions and any action in which the releasees are or may be a defendant or third party or additional defendant." Paragraphs 11 and 12, which among other things, require the plaintiffs to hold the Mercedes defendants harmless from all subsequent claims including those for contribution by the non-settling defendants, are also indicative of the intent of the parties to extinguish any additional liability. We do not believe that the

decision in *Baker* changes the law of this Commonwealth as suggested by the plaintiffs. It remains a "risk" of any plaintiff who accepts and agrees to sign a "pro rata" release that he or she will be precluded from fully recovering all of the damages subsequently awarded by a jury against non-settling defendants.

The plaintiffs also argue that they are entitled to a new trial because the court failed to charge the jury on concepts of antecedent negligence after the jury requested that the court again review the law with regard to the doctrine of product negligence (product liability). In posing that argument, the plaintiffs somehow conclude that the jury was clearly confused as to the nature and interplay of the claims against the MercedesBenz, RAC and Curran defendants, and that by repeating the strict liability portion of the jury charge, the jury became confused and entered a verdict "which was so incomprehensible and in such direct conflict with the evidence that it shocks one's sense of justice." We cannot agree with that proposition. Following deliberation of the jury for a period of time, the jury returned to the courtroom at 5:05 p.m. on April 17, 2000, and transmitted a written request to the court for additional instructions. The court directed that the request be made part of the record, and in the presence of counsel and the jury indicated that as interpreted by the court the request applied only to the product liability or strict liability cause of action where the jury asked that the court redefine "product negligence." To clarify the written request, the court asked the foreman of the jury whether or not the requested instruction related to product liability, to which the foreman replied yes. As a result, this court reinstructed the jury as to the

legal concepts of product liability. Nowhere was there any indication that the jury was somehow confusing concepts of antecedent and subsequent negligence with strict liability. Clearly, the jury asked for an instruction on a specific issue, that of product liability, and this court would have had to literally go into the minds of the jurors to determine what plaintiffs' counsel suggest: "the jury was obviously confused about whether or not the non-settling defendants could be held in on the negligence if they, in fact, found that the defect in the Mercedes was a cause . . . of plaintiff's injury." Nothing indicated to this court that the jury was in any way confused about the law related to the negligence action, the verdict demonstrated that the jury could distinguish between the strict liability and negligence claims, and, thus, an instruction on a point not requested by the jury would have been inappropriate.

The plaintiffs next argue that the court erred in allowing the jury to consider the liability of the Mercedes defendants, arguing that somehow a directed verdict should have been entered in the Mercedes defendants' favor. Plaintiffs' arguments in this regard simply belie the record. Clearly, the plaintiffs' case in chief, together with the cross-examination of plaintiffs' witnesses, established liability on the part of the Mercedes defendants, both in terms of product liability and potential negligence on their part. The plaintiffs' proof established the Mercedes defendants' liability. The plaintiffs' expert (Mitzen) testified extensively on cross-examination by the defendants with respect to the negligence of the Mercedes entities on the claims asserted, and testified not only that there was a defect in the throttle linkage, but that there was

also a failure of the Mercedes vehicle to have proper brakes and a defect in failing to have a proper interlock when the brake and acceleration were both in use. Clearly, there was substantial evidence in front of the jury to find that the Mercedes defendants were liable, and that the liability of the Mercedes defendants was the primary cause of the injury to the respective plaintiffs.

Finally, the plaintiffs argue that they should be entitled to judgment n.o.v. because the verdict as entered by the jury, at least as to the Mercedes defendants, was not supported by sufficient evidence in the record. The plaintiffs correctly recite that judgment n.o.v. may be entered where the movant is entitled to judgment as a matter of law, or where the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Phillips v. A-Best Products Co.,* 542 Pa. 124, 665 A.2d 1167 (1995). The plaintiffs then make a conclusionary statement that no two reasonable minds could disagree that the verdict should have been against the defendants RAC and Curran only, with RAC 90 percent liable and Curran 10 percent liable. Simply stated, this runs contrary to the evidence submitted in this case. Clearly, the Mercedes defendants placed into commerce a vehicle which was defective in design, and warranted a determination of liability against those defendants. Furthermore, the testimony revealed that the Mercedes defendants may have been negligent in not implementing adequate recall proceedings for a defect of the nature involved here. This court cannot envision how reasonable minds would not impose liability on the Mercedes defendants given the proofs offered at trial.

## II. DEFENDANT READING ANTHRACITE COMPANY'S MOTIONS FOR JUDGMENT N.O.V. AS TO WILLIAMS PLAINTIFFS AND THERESA OGRODNICK

The defendant, Reading Anthracite Company, filed motions for judgment n.o.v. as to the Williams plaintiffs, as well as to the plaintiff, Theresa Ogrodnick. Because the claims raised as to both are duplicative, we address both claims collectively. Initially, we note that while the motion itself asserts claims against the Williams plaintiffs in addition to those against Ogrodnick, some of those claims have not been argued or briefed by this defendant, and are thus not considered by the court. Only issues specifically raised in post-trial motions are preserved for review. *Commonwealth v. Beckham*, 349 Pa. Super. 430, 503 A.2d 443 (1986). Moreover, even though an issue is contained in a post-trial motion, unless it is briefed or argued during the post-trial proceedings, the issue is waived. *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978). Accordingly, we address only those issues briefed and argued by defendant Reading Anthracite Company.

The defendant first argues that the court committed error in denying the defendant's motion for summary judgment as to the defendant, Reading Anthracite Company, on the alleged claim of negligence. Essentially, the defendant here argues that the evidence against Reading Anthracite Company was irrelevant and should have been excluded as immaterial, and that its tendency to prove the main issue was slight, and thus such evidence was improper. The plaintiffs' complaint against RAC, as the

owner of the subject Mercedes at the time of recall, was based upon RAC's negligent failure to have the recall work performed, negligent entrustment, respondeat superior, and loss of consortium. On February 15, 1996, the plaintiffs filed a motion for leave to file an amended complaint. One of the proposed amendments was a new negligence count against RAC. On June 30, 1997, this court entered an order which, inter alia, denied the request to add a new negligence count against RAC. Thereafter, on February 28, 1998, RAC filed a motion for summary judgment on all of plaintiffs' claims including "negligent entrustment, respondeat superior, negligence and loss of consortium." On May 12, 1998, this court entered an order granting RAC's motion for summary judgment as to plaintiffs' negligent entrustment and respondeat superior claims, but denying RAC's motion for summary judgment as to the plaintiffs' negligence and loss of consortium claims. In that order, the court cited the existence of sufficient facts of record to support a claim of negligence. The basis of RAC's subsequent motion for summary judgment was that since there was no separate count against it entitled "negligence," and because the only separate titled counts against it (negligent entrustment and respondeat superior) had been dismissed, there was no remaining claim against RAC. This court simply recognized that assertion as a simplistic posture which overlooked the realities of this case.

Under rules of pleading, it is not necessary that the plaintiff plead or identify in the complaint the legal theories upon which its cause of action is based, but only that it plead sufficient facts to support such a cause of action. Pa.R.C.P. 1019 provides that material facts on which a

cause of action is based shall be stated in a concise and summary form. In construing this rule, our courts have consistently held that a plaintiff is not required to state the legal theory underlying the complaint, but only allege material facts upon which the cause of action is based. *Bartanus v. Lis,* 332 Pa. Super. 48, 480 A.2d 1178 (1984). It is the court's duty to discover the causes of action. *Manor Junior College v. Kaller's Inc.,* 352 Pa. Super. 310, 507 A.2d 1245 (1986). In *Bartanus,* the appellate court recognized the liberal construction and application of rules mandated by Pa.R.C.P. 126 and recognized the existence of a cause of action for intentional infliction of emotional distress and alienation of affections in a single paragraph. As stated by the *Bartanus* court:

"Even though appellant did not separate his factual allegations into separate counts specifying the legal theories underlying the complaint, the trial court was obligated to consider what causes of action were supported by the facts alleged. Under Pennsylvania's fact pleading system, the complainant need only state the material facts upon which a cause of action is based. Pa.R.C.P. 1019(a). The duty to discover the cause or causes of action rests with the trial court." *Bartanus,* 332 Pa. Super. at 57, 480 A.2d at 1182.

In this proceeding, the plaintiffs' complaint contains more than adequate allegations concerning the negligence of RAC, even though they may not appear in a separate count under the heading of "negligence." (See paragraphs 4, 11, 12 and 73 of plaintiffs' complaint.) Although the Williams' complaint captions the action against RAC as

one involving negligent entrustment, the pleading itself clearly sounds in negligence. As noted in this court's order of April 6, 2000, while the complaint does assert negligent entrustment, a fair reading of the Williams' complaint by RAC placed RAC on notice that negligence claims were being made against RAC for failing to comply with the recall notices, and, thus, the pleadings are adequate to support a verdict of negligence against defendant RAC. Furthermore, RAC itself acknowledged and argued in a previous motion for summary judgment that the averments of the complaint contain a cause of action for negligence. (See motion for summary judgment filed February 28, 1998.) By applying the liberal construction and application of the rules of civil procedure to the content of the plaintiffs' complaint, and it being clear that the defendant was aware of a negligence claim being asserted against it, the motion for summary judgment was properly denied.

Defendant RAC next argues that the court erred in failing to bifurcate the issues of liability and damages, asserting in a conclusionary fashion that bifurcation would have permitted the jury to remain unswayed by sympathy, and require instead that the plaintiffs make clear the claim of liability against the defendant, Reading Anthracite Company. Matters to be considered by a court in deciding whether to bifurcate a case for trial are set forth in the case of *Coleman v. Philadelphia Newspapers Inc.*, 391 Pa. Super. 140, 570 A.2d 552 (1990). As noted by the *Coleman* court, the trial judge must be alert to the danger that evidence relevant to both issues may be offered at only one-half of the trial. Thus, because of this hazard, issues of liability and damages should not be bi-

furcated unless it is determined that they are totally independent prior to bifurcation. As stated by the *Coleman* court, it [bifurcation] should be carefully and cautiously applied and be utilized only in a case and at a juncture where informed judgment impels the court to conclude that the application of the rule will manifestly promote convenience and/or actually avoid prejudice. Piecemeal litigation is not to be encouraged. *Coleman,* 391 Pa. Super. at 146, 570 A.2d at 555. In this case, a bifurcated trial as to the issues of liability and damages would have neither promoted convenience nor actually avoided prejudice. The defendant fails to assert what actual prejudice resulted by trying the issues of liability and damages in the same proceeding. The case was rather straightforward at trial, and while the damages suffered by Mr. Williams were quite serious and debilitating, they were not confusing or overly prejudicial. In view of the lack of any convenience or judicial economy to be gained by a bifurcated trial, and the absence of any actual prejudice to the defendant, the request for a bifurcated trial was properly denied.

The defendant next argues that they are entitled to a judgment n.o.v. because the trial court erred in charging the jury on the "mailbox rule" presumption. Extensive testimony was elicited from Mr. Ernest Cuneo, who was responsible for the recall campaign of Mercedes, which clearly demonstrated the recall procedures utilized, how the envelopes were filled and mailed to the persons on the recall list, and how they were mailed. Cuneo testified from the records of Mercedes as to the identification of serial numbers for the vehicles in question, how the vouchers were printed, the manner in which the no-

tices were placed into the envelope, and that the computer listings of required owners included Reading Anthracite Company. Admittedly, Mr. Cuneo could not testify that he personally knew or witnessed the recall notice being mailed to RAC, but that is not what is required to invoke the rule. Evidence of actual mailing is not necessary. Rather, when a letter or recall notice is prepared for distribution in the usual course of business and is placed in the regular place of mailing, evidence of custom of the establishment as to the mailing of such letters is receivable as evidence that it was duly mailed. See *Christie v. Open Pantry Food Marts,* 237 Pa. Super. 243, 352 A.2d 165 (1975); *PennDOT v. Brayman Construction Corp.-Bracken Construction Co.,* 99 Pa. Commw. 373, 513 A.2d 562 (1986). The testimony of Mr. Cuneo clearly supports application of the presumptive notice upon RAC. Under the law of this Commonwealth, proof of the office mailing procedures with proof that the notice was prepared in the regular course of business and was placed in the normal course of mailing is sufficient to show receipt of the item, and thus it was appropriate for the court to give an instruction to the jury on that point. See also, *Donegal Mutual Insurance Co. v. Pennsylvania Department of Insurance,* 694 A.2d 391 (Pa. Commw. 1997).

## III. PLAINTIFFS' MOTION FOR COSTS/ DEFENDANTS' MOTION TO QUASH

In addition to the motions filed by the plaintiffs pursuant to Pa.R.C.P. 227, both the Williams and Ogrodnick plaintiffs have filed motions with this court for the as-

sessment of costs attributable to the underlying litigation directed toward the Curran and RAC defendants. In response, the defendants have filed motions to quash the request for costs. In the respective motions for costs, each of the defendants set forth a list of items that they assert are recoverable as costs of the within action, which include, inter alia: costs for postage, attorney travel time, research time (Lexis/Westlaw), medical records requests, deposition costs, copying costs, and records for other attorneys. In addition, the motions likewise contain appropriate costs of record, including filing fees and sheriff's expenses. In total, the costs asserted by plaintiff Ogrodnick come to a total of $7,772.66 while the costs asserted by the Williams plaintiffs are $111,138.11. Only the record costs associated with the process of litigation—*i.e.* filing fees, service costs—are recoverable as taxable costs in this proceeding.

Generally, parties to a litigation are responsible for their own costs, unless there is an agreement provided by the parties, another recognized exception, or statutory authority for seeking such costs. *Cher-Rob Inc. v. Art Monument Co.,* 406 Pa. Super. 330, 594 A.2d 362 (1991). Recoverable costs are those costs for proceeding in court, rather than preparation, consultation and fees generally. *Gregory v. Harleysville Mutual Insurance Co.,* 374 Pa. Super. 33, 542 A.2d 133 (1988). Here, the plaintiffs are making a request for costs incurred in preparation of their case for trial. Although a trial court does have discretion to assess costs, the bulk of the requests here are costs not recognized as recoverable costs of prosecuting a case. Accordingly, the plaintiffs here are not entitled to costs connected with the litigation, but are

limited to the recovery of record costs for the pleadings and the service of same. See *Walasavage v. Marinelli,* 334 Pa. Super. 396, 483 A.2d 509 (1984).

## IV. MOTIONS OF DEFENDANTS RAC AND CURRAN JR. TO MOLD THE VERDICT

Both the RAC defendant and James J. Curran Jr., defendant, have moved this court to mold the verdict entered by the jury to reflect the reductions as set forth in the releases in the Ogrodnick and Williams claims and the finding of liability against RAC and James J. Curran Jr. Specifically, both defendants seek to have the verdicts molded to reflect the determination of liability by the jury, and the apportionment of responsibility for each defendant as a result of the respective releases which were made part of the record as defense exhibits numbers 84 and 85.

As previously reflected in this opinion, this court found that prior to trial the plaintiffs entered into joint tort-feasor releases with the various Mercedes defendants and that those releases provided a reduction of the verdict on a pro rata basis. As reflected in the defense exhibits 84 and 85, the plaintiffs entered into pro rata joint tort-feasor releases with the settling defendants, the language of those being specifically set forth in paragraphs 5 through 7 of the release. The Uniform Contribution Among Tort-Feasors Act provides that a release by a plaintiff of one tort-feasor does not discharge the other tort-feasors unless the release provides for same. See generally, 42 Pa.C.S. §8321 et seq.; specifically, 42 Pa.C.S. §8326. However, such a release does reduce the claim against

the other tort-feasors in the amount of the consideration paid for the release or in any amount of proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid. Here, the plaintiffs and the settling defendants entered into a valid pro rata release, and thus the settling defendants are bound by the terms and conditions of that release and the verdict must be molded accordingly. Specifically, Reading Anthracite Company and James J. Curran Jr. are entitled to a pro rata reduction of the verdict entered against the Mercedes defendants, rather than a pro tanto reduction as argued by the plaintiffs. Although the plaintiffs argue the application of *Baker v. ACandS Inc., supra,* as noted previously in this opinion, where as here the releases are clear as to the nature of the release, and where both negligence and strict liability may be applicable, recognition of the releases is required and accordingly the verdict must be molded.

As such, and in light of the releases entered into in the Ogrodnick and Williams settlements, the verdicts, prior to the assessment of delay damages, must be molded to reflect a percentage share of liability on the verdict against RAC of nine percent, and a percentage of the share of liability against defendant James J. Curran Jr., of one percent. Thus, pursuant to the Ogrodnick release, the verdict must be molded to assess liability against Reading Anthracite Company in the amount of $20,250, and against James J. Curran Jr., in the amount of $2,250. The verdicts with regard to the Williams plaintiffs must accordingly be molded to find liability against Reading Anthracite Company and in favor of Mr. Williams in the sum of $661,500, and in favor of Margaret A. Williams

in the sum of $45,000; and liability against the defendant, James J. Curran Jr., in the amount of $73,500 in favor of Mr. Williams, and $5,000 in favor of the plaintiff, Margaret A. Williams.

## V. PLAINTIFFS' MOTION FOR DELAY DAMAGES

Both the Williams plaintiffs, as well as Theresa Ogrodnick, have filed with this court a motion pursuant to Pa.R.C.P. 238 for imposition of delay damages. In those motions, the plaintiffs assert that the delay damages should be assessed against the remaining defendants, RAC and Curran Jr., on the full amount of the verdict, or, in the alternative, on the full amount of the shortfall between what the Mercedes defendants actually paid for the releases and the total amount of the verdict. In support, they again argue the joint and several liability propositions discussed recently, alluding to the application of *Baker v. ACandS Inc.,* 562 Pa. 290, 755 A.2d 664 (2000). On the other hand, the defendants argue that delay damages are not to be assessed, and that in the alternative, if they are assessed, they are to be based upon the proportionate liability of each of the remaining defendants, and further argue that they should not be assessed on the loss of consortium claim award to Mrs. Williams.

In this case, the jury's award was clearly more than 125 percent of the defendants' last written settlement offer, and thus the plaintiffs are entitled to delay damages pursuant to Pa.R.C.P. 238. However, we believe the law of this Commonwealth, where a verdict has been rendered against joint tort-feasors, and at least one joint tort-feasor had settled prior to trial, requires that the de-

lay damages be assessed only upon the portion thereof which the non-settling defendant is required to pay. As noted by the Pennsylvania Superior Court in *Baciotti v. Simmons,* 346 Pa. Super. 23, 498 A.2d 1351 (1985):

"The total verdict recovered by [the plaintiff] . . . must be apportioned in the same manner in which the jury apportioned liability. 'It would be unrealistic to require each defendant to offer nearly the full amount of damages ultimately recovered in an action, where the amount finally attributed to each defendant is only a percentage of the total [verdict] . . . .' *Richardson v. LaBuz,* 81 Pa. Commw. 436, 458, 474 A.2d 1181, 1196 (1984). Thus, the liability of [the non-settling defendant] is computed on . . . the proportionate part of the total verdict assessed against [the non-settling defendant]. *Id.* at 29-30, 498 A.2d at 1354. See also, *Korn v. Consolidated Rail Corp.,* 355 Pa. Super. 170, 512 A.2d 1266 (1986).

Furthermore, we must agree with the defendants' argument that delay damages may not be assessed on a claim for loss of consortium. In *Anchorstar v. Mack Trucks Inc.,* 533 Pa. 177, 620 A.2d 1120 (1993), the Pennsylvania Supreme Court addressed this issue specifically as it relates to Pa.R.C.P. 238 and explained that while a claim of loss of consortium stems from the spouse's bodily injury, it is nevertheless a separate and distinct claim and that one who has suffered a loss of consortium has not sustained a bodily injury, but rather has experienced an injury to marital expectations, thus, delay damages are inappropriate. *Anchorstar v. Mack Trucks Inc.,* 533 Pa. 177, 620 A.2d 1120 (1993).

Finally, we further must agree with the argument of the defendants that delay damages should not be assessed as to the Williams plaintiffs for the time frame from January 6, 2000, through the conclusion of trial. This case was scheduled to proceed to trial during the January civil term of court, and at argument on motions this court determined that the late identification of an expert witness by the Williams plaintiffs mandated a continuance of the trial to allow defendants to have that testimony evaluated. In all other respects the case was ready to proceed to trial, and only the delay occasioned by the late identification of an expert caused the trial to be moved to the April 2000 term of court. Pa.R.C.P. 238 specifically excludes calculation of delay damages for any time during which the plaintiff caused the delay of trial. Pa.R.C.P. 238(3)(b)(2). See also, *Costa v. Lauderdale Beach Hotel,* 534 Pa. 154, 626 A.2d 566 (1993).

Accordingly, the plaintiffs' motion for delay damages is granted to the extent consistent with this opinion. As such, those delay damages are set forth hereinafter and shall be added to the proportionate amount of the verdicts against the respective defendants.

*FRANK C. WILLIAMS JR. v.*
*READING ANTHRACITE CORP.*

(MOLDED VERDICT—$661,500)

| | | |
|---|---|---|
| 10/07/94 - 12/31/94 (85 days) | $661,500 x 7.0% = | $10,783.36 |
| 01/01/95 - 12/31/95 | $661,500 x 9.5% = | $62,842.50 |
| 01/01/96 - 12/31/96 | $661,500 x 9.5% = | $62,842.50 |
| 01/01/97 - 12/31/97 | $661,500 x 9.25% = | $61,188.75 |

| | | | |
|---|---|---|---|
| 01/01/98 - 12/31/98 | $661,500 x 9.5% | = | $62,842.50 |
| 01/01/99 - 12/31/99 | $661,500 x 8.75% | = | $57,881.25 |
| 01/01/00 - 01/06/00 (6 days) | $661,500 x 9.5% | = | $1,033.03 |
| TOTAL | | | $319,413.89 |

## *FRANK C. WILLIAMS JR. v. JAMES J. CURRAN JR.*

### (MOLDED VERDICT—$73,500)

| | | | |
|---|---|---|---|
| 10/07/94 - 12/31/94 (85 days) | $73,500 x 7.0% | = | $1,198.15 |
| 01/01/95 - 12/31/95 | $73,500 x 9.5% | = | $6,982.50 |
| 01/01/96 - 12/31/96 | $73,500 x 9.5% | = | $6,982.50 |
| 01/01/97 - 12/31/97 | $73,500 x 9.25% | = | $6,798.75 |
| 01/01/98 - 12/31/98 | $73,500 x 9.5% | = | $6,982.50 |
| 01/01/99 - 12/31/99 | $73,500 x 8.75% | = | $6,431.25 |
| 01/01/00 - 01/06/00 (6 days) | $73,500 x 9.5% | = | $114.78 |
| TOTAL | | | $35,490.43 |

## *THERESA OGRODNICK v. READING ANTHRACITE CORP.*

### (MOLDED VERDICT—$20,250)

| | | | |
|---|---|---|---|
| 06/02/95 - 12/31/95 (212 days) | $20,250 x 9.5% | = | $1,117.36 |
| 01/01/96 - 12/31/96 | $20,250 x 9.5% | = | $1,923.75 |
| 01/01/97 - 12/31/97 | $20,250 x 9.25% | = | $1,873.13 |
| 01/01/98 - 12/31/98 | $20,250 x 9.5% | = | $1,923.75 |
| 01/01/99 - 12/31/99 | $20,250 x 8.75% | = | $1,771.88 |
| 01/01/00 - 04/18/00 (108 days) | $20,250 x 9.5% | = | $569.22 |
| TOTAL | | | $9,179.09 |

*THERESA OGRODNICK v. JAMES J. CURRAN JR.*

(MOLDED VERDICT—$2,250)

06/02/95 - 12/31/95 (212 days)     $2,250 x 9.5%     =
$124.15

01/01/96 - 12/31/96     $2,250 x 9.5%     =     $213.75

01/01/97 - 12/31/97     $2,250 x 9.25%     =     $208.13

01/01/98 - 12/31/98     $2,250 x 9.5%     =     $213.75

01/01/99 - 12/31/99     $2,250 x 8.75%     =     $196.88

01/01/00 - 04/18/00 (108 days)     $2,250 x 9.5%     =
$ 63.25

TOTAL     $1,019.91

## ORDER

And now, August 27, 2001, in accordance with the attached opinion, it is hereby ordered as follows:

(1) The motion of the plaintiffs, Frank C. Williams Jr. and Margaret A. Williams, for judgment n.o.v. or, in the alternative, for a new trial, is denied.

(2) The motion of the plaintiff, Theresa Ogrodnick, for judgment n.o.v. or, in the alternative, for a new trial, is denied.

(3) The motion of the defendant, Reading Anthracite Company, for a judgment n.o.v. as to the plaintiffs, Frank C. Williams Jr. and Margaret A. Williams, is denied.

(4) The motion of the defendant, Reading Anthracite Company, for judgment n.o.v. as to the plaintiff, Theresa Ogrodnick, is denied.

(5) The motion of the plaintiffs, Frank C. Williams Jr. and Margaret A. Williams, for costs is granted in part;

costs are assessed against the defendants limited to actual costs of record (filing pleadings, service costs, etc.).

(6) The motion of the plaintiff, Theresa Ogrodnick, for costs is granted in part; costs are assessed against the defendants limited to actual costs of record (filing pleadings, service costs, etc.).

(7) The motions of the defendants, Reading Anthracite Company and James J. Curran Jr., to mold the verdict as to all defendants to reflect the proportionate share of liability imposed by the jury is granted.

(8) The motion of the plaintiffs, Frank C. Williams Jr. and Margaret A. Williams, and plaintiff Theresa Ogrodnick, to mold the verdict to assess delay damages as to the remaining defendants is granted in part in conformity with the attached opinion, and judgment shall be entered as follows:

(A) Judgment shall be entered in favor of *Frank C. Williams Jr. v. Reading Anthracite Company* in the total amount of $980,913.89. (Molded verdict $661,500 plus delay damages of $319,413.89.)

(B) Judgment shall be entered in favor of the plaintiff, Margaret A. Williams, and against the defendant, Reading Anthracite Company, in the amount of $45,000.

(C) Judgment shall be entered in favor of the plaintiff, Frank C. Williams Jr., and against the defendant, James J. Curran Jr., in the total amount of $108,990.43. (Molded verdict $73,500 plus delay damages of $35,490.43.)

(D) Judgment shall be entered in favor of the plaintiff, Margaret A. Williams, and against the defendant, James J. Curran Jr., in the sum of $5,000.

(E) Judgment shall be entered in favor of the plaintiff, Theresa Ogrodnick, and against the defendant, Reading Anthracite Company, in the total amount of $29,429.09. (Molded verdict $20,250 plus delay damages of $9,179.09.)

(F) Judgment shall be entered in favor of the plaintiff, Theresa Ogrodnick, and against the defendant, James J. Curran Jr., in the total amount of $3,269.91. (Molded verdict $2,250 plus delay damages of $1,019.91.)

APRIL 5, 2000
ORDER OF COURT
AND ACCOMPANYING
OPINION

STINE, *J.*, April 5, 2000—Pending before the court are identical motions by Reading Anthracite Company and James J. Curran Jr., to strike the discontinuance entered by the court's order of May 26, 1999, or, in the alternative, to permit joinder to add as additional parties those defendants discharged by the aforesaid order. In addition, the defendant, James J. Curran Jr., as executor of the estate of James J. Curran Sr., has filed a motion seeking reconsideration of the court's order of May 26, 1999, seeking to have the deleted defendants added to the caption of the action as party defendants at the time of trial. Because we believe that by compelling the settling defendants to participate at the time of trial would

be contrary to well-established policy within Pennsylvania—that being to promote parties from entering into settlements—and because of the nature of the release, and the responsibility for contribution on the part of the settling defendants, we believe the appropriate action is to grant the motion for reconsideration. By doing so, we return the settling defendants to the caption of the proceeding as party defendants at the time of trial of this action.

Initially, we note that the subject order of court dated May 26, 1999, was entered upon motion of the plaintiffs and settling defendants, and was not at any time opposed by the non-settling defendants, who are currently movants regarding the issues addressed here. Nevertheless, we do not feel that the arguments posed by the plaintiffs are cognizable, nor do they represent the law or policy within this Commonwealth. Rather, the plaintiffs' proposed interpretation is an attempt to prevent the non-settling defendants from asserting the legal right they have as joint tort-feasors to contribution. See *Charles v. Giant Eagle Markets*, 513 Pa. 474, 522 A.2d 1 (1987); *Moran v. G. & W.H. Corson Inc.*, 402 Pa. Super. 101, 586 A.2d 416 (1991). Essentially, the plaintiff is attempting to secure double recovery by arguing that the release at issue does not constitute a *"Griffin* release."

Mercedes-Benz executed a joint tort-feasor release with the plaintiff, Williams. We believe that the release established Mercedes' status as a joint tort-feasor while providing the non-settling defendants with a pro rata reduction. After executing the release, the plaintiff moved for a discontinuance of the action against Mercedes,

which was granted without opposition. Nevertheless, we believe that reconsideration, in light of the nature of the release and policy considerations within this Commonwealth, is appropriate. Initially, it is necessary to assess whether or not the release executed constitutes a *"Griffin* release." A *"Griffin* release" is a type of joint tortfeasor release that (1) establishes a settling party's status as a joint tort-feasor, and (2) declares a non-settling party's right to a pro rate reduction in any award. See *Griffin v. United States,* 500 F.2d 1059 (3d Cir. 1974). While on first inspection one would question whether the release at issue here actually established Mercedes' status as a joint tort-feasor, who substantially contributed to the accident, a comparison to the release executed in *Griffin* indicates otherwise. The wording of each release is similar. In *Griffin,* the release used the wording "whether or not the released party herein was in fact a joint tort-feasor" and "however, this provision in no way constitutes an admission of liability by the party released herein, Pfizer Inc." Therefore, even though the present release uses terms that appear to hedge on establishing Mercedes' status as a joint tort-feasor, the release does constitute a *"Griffin* release." The conclusion that the release executed by Mercedes is a *"Griffin* release" dictates the remedy by this court.

The case of *Smithgall v. PennDOT,* 33 D.&C.4th 199 (1996), while factually different, is instructive here. In that case, defendant, PennDOT, joined defendants Knowland and J.B. Hunt. Prior to trial Knowland and Hunt settled with the plaintiff. The plaintiff filed a motion to dismiss the settling defendants. PennDOT argued that the two released defendants should be required to

attend and participate in trial so their share of responsibility could be determined by the jury. The trial court held that the settling defendants could not be compelled to participate at trial, and therefore granted the dismissal. However, the court also concluded that the settling defendants would remain as named parties on the caption. The court reasoned that there was nothing to be gained by compelling the settling defendants to participate in trial, and that the settling defendants had executed a "*Griffin* release" that had provided all the benefits necessary to the non-settling defendants.

In concluding that there was nothing to be gained by compelling participation by the settling defendants, the *Smithgall* court looked to *Young v. Verson Allsteel Press Co.,* 524 F. Supp. 1147 (E.D. Pa. 1981). In *Young,* the court held that when a settling party executes a "*Griffin* release," their presence at trial is no longer a necessity in order to allocate liability. That court looked to *Griffin* and reasoned that there is no benefit in compelling a settling defendant to participate at trial once they have (1) conceded their status as a joint tort-feasor, and (2) established a non-settling defendant's right to a pro rate reduction. Compelling a settling defendant to participate at trial would only hinder and deter parties from entering into settlements. Thus, the court in *Smithgall* concluded that the settling defendants, Knowland and Hunt, could not be compelled to attend trial, because there was no benefit from their presence. They, as the settling defendants here, had established their status as joint tortfeasors and had established non-settling defendant, PennDOT's, right to a pro rate reduction in any award. Non-settling defendant, PennDOT, was not prohibited

from arguing that the settling defendant's liability was the sole or majority cause of the accident. While the *Smithgall* court recognized that the lack of presence at trial by the settling defendants may be somewhat prejudicial, they concluded that the policy within this Commonwealth would not require their appearance at trial, but would require that they be maintained as named parties to the action.

As previously noted, we find that Mercedes-Benz executed a joint tort-feasor release with the plaintiff, Williams, that does fit within the definitional category of a "*Griffin* release." While we do not agree that it would be appropriate to grant motions by these defendants to compel the settling defendants to defend this action, we do believe that both judicial economy and legal policy within Pennsylvania dictate that the released defendants remain named parties to the action to ensure rights of contribution and indemnity. Even without the presence at trial of the settling defendants, their share of liability can be determined by a jury.

Accordingly, we enter the following.

## ORDER

And now, April 5, 2000, at 2:30 p.m., upon consideration of the motions of Reading Anthracite Company and James J. Curran Jr., to strike the discontinuance previously entered by the court, or, in the alternative, to permit joinder, as well as the motion of the defendant, James J. Curran Jr., as executor of the estate of James J. Curran Sr., seeking reconsideration of this court's order of May 26, 1999, deleting Mercedes-Benz of North America Inc.,

Daimler-Benz North America Corporation and Carson-Pettit Inc., from the caption, it is hereby ordered that Mercedes-Benz of North America Inc., Daimler-Benz North America Corporation, and Carson-Pettit Inc., shall appear on the caption as party defendants, as well as on the verdict slip at the trial of this action.[1]

---

1. We believe that the plaintiffs' proposed interpretation of prior case law is an attempt to prevent the non-settling defendants from asserting the legal right they have as joint tort-feasors to contribution. We believe that in viewing the language and nature of the release at issue in this proceeding with that of the release in *Griffin v. United States,* that the similarity of language leads to the conclusion that the release at issue here is in fact a *"Griffin* release." See *Griffin v. United States,* 500 F.2d 1059 (3d Cir. 1974). We further believe that the analysis found in *Smithgall v. PennDOT,* 33 D.&C.4th 199 (1996), is instructive here. While we believe both judicial economy and primary case law requires the relief set forth in this order, we further recognize that the presence of the settling defendants is no longer a necessity in order to allocate liability, and, thus, nothing is to be gained by compelling their participation at the time of trial.